John D. Alessio (Bar No. 174900)
Lisel M. Ferguson (Bar No. 207637)
Zagros S. Bassirian (Bar No. 299581)
PROCOPIO, CORY, HARGREAVES
    & SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398
E-mail: john.alessio@procopio.com
E-mail: lisel.ferguson@procopio.com
E-mail: zag.bassirian@procopio.com

Attorneys for Plaintiff
LEFT COAST WRESTLING, LLC

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEFT COAST WRESTLING, LLC., a California limited liability company, <br><br>         Plaintiff, <br><br> v. <br><br> DEARBORN INTERNATIONAL, LLC., a California limited liability company a/k/a and/or d/b/a TRI TITANS; DUKE MINH LE, an individual, <br><br>         Defendants. | Case No. **'17CV0466 LAB NLS** <br><br> **COMPLAINT FOR:** <br><br> **(1) VIOLATION OF SECTION 43(A) OF THE LANHAM ACT;** <br> **(2) VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTIONS 17200 AND 17500 *et seq.*;** <br> **(3) VIOLATION OF CALIFORNIA COMMON LAW FOR TRADEMARK INFRINGEMENT;** <br> **(4) CONVERSION;** <br> **(5) BREACH OF FIDUCIARY DUTY; AND** <br> **(6) DECLARATORY RELIEF;** <br><br> **(DEMAND FOR JURY TRIAL)** |

Plaintiff LEFT COAST WRESTLING, LLC, a California limited liability company ("Plaintiff" or "LCW") hereby alleges as follows:

### PARTIES

1.     Plaintiff is a California limited liability company with its principal place of business at 13828 Via Boltana, San Diego, California 92129.

2.     Plaintiff is informed and believes, and on that basis alleges, that Defendant DEARBORN INTERNATIONAL, LLC a/k/a and/or d/b/a TRI TITANS ("Dearborn") is a California limited liability company with its principal place of business at 7847 Dunbrook Road, Suite D, San Diego, California 92126.

3.     Plaintiff is informed and believes, and on that basis alleges, that Defendant DUKE MINH LE ("Mr. Le"), an individual, is a resident of the State of California.   Mr. Le is, and at all relevant times mentioned herein was, a Member of LCW and its Vice-President, as well as its agent, partner, joint venturer, and/or employee; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contradiction with the other allegations.

4.     Plaintiff is informed and believes, and on that basis alleges, that Mr. Le is the Manager of Dearborn.

5.     Dearborn and Mr. Le shall hereinafter be collectively referred to as "Defendants."

6.     Plaintiff is informed and believes, and on that basis alleges, that Defendants were acting as an agent, conspirator, partner, joint venturer, alter ego and employee of each other, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of the other; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contradiction with the other allegations.

7.     Plaintiff is informed and believes, and on that basis alleges, that

2

DOCS 124952-000001/2822665.8                                    Case No. _____

Dearborn is, and at all times mentioned herein was, owned and controlled by Mr. Le; that there exists, and all times mentioned herein has existed, a unity of interest and ownership between and among each of Dearborn and Mr. Le, such that any individuality and separateness of each of Dearborn and Mr. Le has ceased, if ever the same existed; that Dearborn is a mere shell, instrumentality and/or conduit through which Mr. Le has carried on his business affairs, as if Dearborn did not exist; and that Mr. Le is the alter ego of Dearborn, in that he has completely dominated and controlled the business and affairs of Dearborn, has commingled the funds and assets of Dearborn with his own funds and assets, has caused or allowed Dearborn to be under-capitalized and/or insolvent, has withheld funds of Dearborn for his own benefit and to the detriment of Dearborn's creditors, has transferred assets between and among himself and Dearborn for no or inadequate consideration, has diverted assets from Dearborn for his own use and benefit, and/or has failed to maintain proper corporate records and minutes of Dearborn. Accordingly, recognizing any separate legal personage among Defendants would sanction fraud and promote injustice.

## JURISDICTION AND VENUE

8.    This action arises under the federal trademark statute (the "Lanham Act"), 15 U.S.C. § 1051 *et seq*., and under statutory and common law of the State of California. This Court has subject matter jurisdiction over the federal trademark claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338. The Court has subject matter jurisdiction over the related California state law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

9.    Plaintiff is informed and believes, and on that basis alleges, that this Court has personal jurisdiction over Defendants because they have extensive contacts with, and conduct business within, the State of California and this judicial district; Defendants have caused the 2017 Battle on the Midway wrestling tournament described below to be advertised, promoted and sold in this judicial

3

Case No. _____

district; the causes of action asserted in this Complaint arise out of Defendants' contacts with this judicial district; and because Defendants have caused tortious injury to Plaintiff in this judicial district.

10.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) because Defendants have extensive contacts with, and conduct business within, the State of California and this judicial district; Defendants have caused the 2017 Battle on the Midway wrestling tournament to be advertised, promoted and sold in this judicial district; the causes of action asserted in this Complaint arise out of Defendants' contacts with this judicial district; and because Defendants have caused tortious injury to Plaintiff in this judicial district.

## FACTUAL BACKGROUND

## LEFT COAST WRESTLING

11.    In or around late 2015, Aaron Root ("Mr. Root"), Perry Watson ("Mr. Watson"), and Mr. Le decided to form, and have equal ownership in, a company called Left Coast Wresting.  LCW was registered with the Secretary of State of the State of California as a California limited liability company on January 4, 2016, and its only Members are Mr. Root, Mr. Watson and Mr. Le.  LCW is a Member-Managed limited liability company.

12.    LCW was formed for the purpose of coordinating, operating and promoting Olympic and Folkstyle wrestling on the west coast through premiere annual wrestling tournaments, the first of which would take place on the USS Midway Museum and Broadway Pier in San Diego, California.    These annual tournaments were all to be named or affiliated with "Battle on the Midway."

13.    In or around late 2015, Plaintiff and Dearborn agreed that Plaintiff would purchase official tournament apparel through Dearborn.  Dearborn agreed that it would only charge Plaintiff Dearborn's cost for the apparel and that Plaintiff could retain all profits, in turn, Dearborn would be promoted as the tournament's official apparel sponsor.  All items not sold during the tournament would remain with

4

Plaintiff to be sold at a later date.

14.    In our around January and February of 2016, Plaintiff contacted the USS Midway Museum to begin planning the 2016 Battle on the Midway tournament (the "2016 BOTM Tournament").

15.    Plaintiff first adopted and used the "Battle on the Midway" mark ("Plaintiff's Mark") at the latest on March 31, 2016.  Plaintiff is informed and believes, and on that basis alleges, that Mr. Le performed numerous acts as a joint venturer and Member of Plaintiff, including, without limitation:

a.    On or around March 31, 2016, Mr. Le, on behalf of LCW and acting as a Member, Vice-President, agent, partner, joint venturer and/or employee, e-mailed a Broadway Pier & Pavilion Event Application and Agreement to a Special Events Associate at the Unified Port of San Diego.  (Exhibit 1, attached hereto and incorporated herein by reference.)    The "Applicant Name" was "Left Coast Wrestling, LLC," and the "Event Name" was "Battle On The Midway." (*See* Exhibit 1, LCW Broadway Pier & Pavilion Event Application and Agreement.)

b.    Plaintiff is informed and believes, and on that basis alleges, that in preparation for the 2016 BOTM Tournament, on April 1, 2016, Mr. Le, on behalf of LCW and acting as a Member, Vice-President, agent, partner, joint venturer and/or employee, registered the domain name for the "Battle on the Midway" website (www.battleonthemidway.com) with GoDaddy.com.

c.    On or around April 4, 2016, an Event Sales Manager for the USS Midway Museum e-mailed the Members of LCW, Mr. Root, Mr. Watson and Mr. Le, an Event Order Form and Facilities Use Agreement for Plaintiff's signature.  The execution and return of these contractual documents were required in order to confirm and reserve the flight deck and hangar bays on the USS Midway for August 13, 2016 through August 15, 2016, the dates the 2016 BOTM Tournament was to take place.

Case No. _____

1           d.     On or around April 4, 2016, Mr. Le responded to the Event Sales

2   Manager, stating in part:

3
4        For administrative purposes – Under Facilities Use Agreement, please change USA Wrestling to **Left Coast Wrestling, LLC** (USER), USA Wrestling is our [sic] sponsoring event.  I'm in the process of filing out all forms as requested.  I hope to have all paperwork for you by Friday morning.  Thank you[.]

5

6

7   (Exhibit 2, p.2, Emphasis in original.)

8           e.     After receiving a revised Facilities Use Agreement, on or around

9   April 6, 2016, Mr. Le responded to the Event Sales Manager, stating in part:

10
     Thank you for sending me the changes….

11       …

12       Currently all pages on Event Order/Invoice SDM23798, in areas of foot note reads: USA Wrestling – 8/13/2016 (page 1-5).  **Please**

13  **make changes to: Left Coast Wrestling LLC – 8/14/2016**.  I appreciate your help in this matter.

14

15  (Exhibit 2, p.1, Emphasis added.)

16          f.     On or around April 7, 2016, the Event Sales Manager responded

17  to Mr. Le and provided a revised Event Order form correctly noting Left Coast

18  Wrestling, LLC in the footer.

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

6

g.      On or around April 7, 2016, Mr. Le, on behalf of LCW and acting as a Member, Vice-President, agent, partner, joint venturer and/or employee, e-mailed copies of the executed Event Order form and Facilities Use Agreement to the Event Sales Manager.   The Facilities Use Agreement states: "This Facilities Use Agreement (FUA) is entered into by and between Left Coast Wrestling LLC (USER) and the USS Midway Museum (MIDWAY)....":



(*See* <u>Exhibit 3</u>, p. 1, attached hereto and incorporated herein by reference.)

h.      On or around April 6, 2016, Mr. Le clearly executed the Facilities Use Agreement on behalf of LCW as its Managing Partner.

USER: Left Coast Wrestling LLC
Signature of officer, partner or other individual
duly authorized to sign:

Signature

Please Print Name

Title

Date

(*See* <u>Exhibit 3</u>, p. 5, LCW Facilities Use Agreement.)

///

///

///

16.    Up and until the 2016 BOTM Tournament Plaintiff continued to prepare for and market the event.  Plaintiff retained Eljay Pena ("Mr. Pena") as its Marketing Director, who was in charge of, without limitation, creating and maintaining Plaintiff's website, designing posters and logos for the tournament, and creating and managing Plaintiff's social media accounts, including Facebook and Instagram.

17.    Plaintiff retained and paid Mr. Pena to develop Plaintiff's Facebook profile, which became active on or around April 5, 2016.  On or around April 7, 2016, Mr. Pena, on behalf of LCW, posted the following image to Plaintiff's Facebook profile, which states: "WE WANT YOU TO BATTLE ON THE MIDWAY AUGUST 13-14, 2016"[1]:



---

[1] https://www.facebook.com/battleonthemidway/photos/a.1193406577358666.1073741825.1193404317358892/119486 4437212880/?type=3&theater

8

Case No. _____

18.    Plaintiff is informed and believes, and on that basis alleges, that on or around April 30, 2016 and continuing through August of 2016, the footer of the Battle on the Midway website displayed the following image, which contains the LCW logo and states: "COPYRIGHT 2016 LEFT COAST WRESTLING LLC BATTLE ON THE MIDWAY – ALL RIGHTS RESERVED":

![Left Coast Wrestling logo]

COPYRIGHT 2016 LEFT COAST WRESTLING LLC BATTLE ON THE MIDWAY - ALL RIGHTS RESERVED.

19.    As news of the 2016 BOTM Tournament spread throughout the national and international wrestling community, third parties also began promoting the event through their own social media accounts.  For example, on or around May 12, 2016, Cal-Grapplers Wrestling Club posted the following Plaintiff-provided image and details on its Facebook profile, which clearly states "Left Coast Wrestling Presents Battle on the Midway…."




DOCS 124952-000001/2822665.8                                    Case No. _____

20.    This Cal-Grapplers Wrestling Club post directed viewers to contact "Eljay Pena Marketing Director Left Coast Wrestling" for more information:



21.    The 2016 BOTM Tournament generated enormous interest both nationally and internationally.  As of August 10, 2016 there were registrants from 20 states and three countries.  Participants included wrestlers, parents, coaches, vendors, fans, celebrities and sponsors.  Due to the anticipated success of the 2016 BOTM Tournament, on or around August 1, 2016, Plaintiff began the process of reserving dates for a 2017 tournament with the USS Midway Museum and Broadway Pier.

22.    Plaintiff's Mark has been and continues to be extensively advertised and promoted nationally and internationally.  By virtue of advertising and promotion, together with consumer acceptance and recognition, Plaintiff's Mark identifies Plaintiff's tournament only, and distinguishes it from other wrestling tournaments organized by others.  Plaintiff's Mark has thus become and is a valuable asset symbolizing Plaintiff, its premier tournament and its goodwill.

23.    After months of planning and hard work, Plaintiff held the 2016 BOTM Tournament on August 13-14, 2016.  During the tournament Plaintiff placed Mr. Le at the entrance in order to process entry fee payments using Plaintiff's iPads.  Mr. Le

Case No. _____

represented to Mr. Root and Mr. Watson that he was having trouble processing the payments into Plaintiff's bank account, resulting in a bottlenecked entry and growingly impatient participants. Mr. Le represented that he could process payments into Dearborn's bank account and then transfer funds to Plaintiff after the tournament was over. Plaintiff trusted Defendants and agreed.

24. After the 2016 BOTM Tournament concluded, on or around September 21, 2016, Mr. Root, Mr. Watson and Mr. Le held a meeting to discuss the tournament and reconcile receipts and expenditures. During this meeting Mr. Le refused to disclose the total amount in entry fees and apparel sales he deposited directly into Dearborn's bank account.

25. During this meeting, Mr. Le also told Mr. Root and Mr. Watson that he no longer needed them to hold the Battle on the Midway tournament moving forward. Mr. Root and Mr. Watson made it clear that the Battle on the Midway was a LCW event and that he had no rights to the tournament on his own. Mr. Le acknowledged this fact and represented that he would not coordinate, operate or promote a Battle on the Midway wrestling tournament on his own or in conjunction with others.

26. Plaintiff is informed and believes, and on that basis alleges, that on or around September 22, 2016, Mr. Le sent a text message to Mr. Root and Mr. Watson stating: "I do not have the time or energy to be a director within LCW. I will leave it to you both, Perry and Aaron to continue with BOTM on your own accord."

27. On or around October 25, 2016, reasonably relying on Mr. Le's representations, Plaintiff placed a deposit with the Port of San Diego in the amount of $2,000.00 as a deposit for the 2017 tournament (the "2017 BOTM Tournament").

28. On or around October 26, 2016, reasonably relying on Mr. Le's representations, Plaintiff placed a deposit with the USS Midway Museum in the amount of $17,000.00 as a deposit for the 2017 BOTM Tournament.

Case No. _____

**DEFENDANTS' UNAUTHORIZED USE OF PLAINTIFF'S MARK**

29.    Plaintiff is informed and believes, and on that basis alleges, that Defendants had constructive and/or actual notice of Plaintiff's ownership of the its mark.    To Plaintiff's shock and dismay, however, Mr. Le intentionally and maliciously misappropriated Plaintiff's website and social media accounts and began infringing on Plaintiff's intellectual property rights.

30.    Plaintiff is informed and believes, and on that basis alleges, that on or around October 28, 2016, Mr. Le directly or indirectly took control of Plaintiff's Facebook profile, which is followed by 3,395 people, and posted the following image which states: "TRI-TITANS PRESENTS BATTLE ON THE MIDWAY." The post also states: "Get ready…The 2017 Battle on the Midway: An International Affair! Tri-Titans has taken the wheel and we're going worldwide! 3 styles, Freestyle, Greco, & Folkstyle, August 10-13, 2017 in beautiful San Diego, California! Details coming soon…" [2]



---

[2]https://www.facebook.com/battleonthemidway/photos/a.1193422670690390.1073741828.1193404317358892/1357480240951298/?type=3&theater

Case No. _____

31.    Plaintiff is informed and believes, and on that basis alleges, that Defendants intentionally and willfully used Plaintiff's Mark in the October 28, 2016 Facebook post to mislead Battle on the Midway participants as to the true ownership, sponsorship and leadership of the 2017 BOTM Tournament.  On information and belief, this was the first date Defendants used Plaintiff's Mark.

32.    On or around November 1, 2016, Defendants took their deceit even further and filed a trademark application (the "Dearborn Application") with the United States Patent and Trademark Office ("USPTO") for the purpose of obtaining a registered service mark for "Battle on the Midway."  (See Exhibit 4, attached hereto and incorporated herein by reference.)   The Dearborn Application, U.S. Application Serial No. 87221919, states Dearborn is the owner of "Battle on the Midway," that it first used the mark on April 8, 2016, and also includes Plaintiff's Facebook posts as evidence of Dearborn's alleged first use of the mark.   The Dearborn Application also states Dearborn first used the mark in commerce on August 12, 2016.

33.    Further, Mr. Le signed the Dearborn Application, which included the following declaration:

> The signatory believes that *to the best of the signatory's knowledge and belief, no other persons*, except, if applicable, concurrent users, *have the right to use the mark in commerce*, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive.  *The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001*, and that such willful false statements and the like may jeopardize the validity of the application or any registration resulting therefrom, declares that all statements made of his/her knowledge are true and all statements made on information and belief are believed to be true.

(Exhibit 4, p. 3-4, USPTO Dearborn Application, Emphasis added.)

34.    Plaintiff is informed and believes, and on that basis alleges, that

13

Case No. _____

Defendants intentionally and willfully completed the Dearborn Application with a false designation of origin of Plaintiff's Mark, false and/or misleading descriptions of fact, and/or false and/or misleading representations of fact which are likely to cause confusion, mistake and deceive persons as to the affiliation, connection or association of Defendants with Plaintiff and/or Plaintiff's Battle on the Midway wrestling tournaments.

35.   Plaintiff is informed and believes, and on that basis alleges, that Defendants had actual knowledge that Plaintiff used and adopted Plaintiff's Mark prior to any use by Defendants.

36.   On or around November 9, 2016, Plaintiff requested that Defendants inventory all LCW property and to return, among other things, pop-up tents, pull carts, apparel, iPads and all electrical equipment belonging to Plaintiff.  In response, Plaintiff is informed and believes, and on that basis alleges, that on or around November 15, 2016, Mr. Le stated he had no interest in partaking in any activities with LCW.  Mr. Le also stated: "Please be advised that 'Battle on the Midway' trademark was registered by Dearborn International LLC with the U.S. Patent and Trademark Office (USPTO) as of November 01, 2016."   Prior to receiving this e-mail Plaintiff had no knowledge of the Dearborn Application or the alleged registration of Plaintiff's Mark.

37.   On or around December 29, 2016, Plaintiff's counsel sent a letter to Defendants advising them of Plaintiff's ownership of Plaintiff's Mark and requested Defendants to immediately cease and desist from further use of Plaintiff's Mark and to return all company assets.  Defendant failed to respond and refuses to comply with Plaintiff's request.

///

///

///

///

DOCS 124952-000001/2822665.8                                          Case No. _____

38.    Plaintiff is informed and believes, and on that basis alleges, that or around January 19, 2017, Mr. Le directly or indirectly posted the following on Plaintiff's Facebook profile, which falsely represents that the 2017 BOTM Tournament was being presented by Tri-Titans instead of Left Coast Wrestling:



39.    Furthermore, Defendants have changed the Battle on the Midway website to say:

> Tri-Titans presents the Battle on the Midway Wresting Tournament. This tournament is a premier national level tournament hosted in San Diego, CA's Broadway Pier with the finals being conducted on the USS Midway!

40.    Defendants have also changed the footer on the Battle on the Midway website to say "© 2017 Dearborn International Inc.," instead of "© Left Coast

Case No. _____

Wrestling, LLC."

41.    Plaintiff has not consented to, sponsored, endorsed or approved of any of Defendants' use of Plaintiff's Mark or any variations thereof in connection with Defendants' marketing and promotion of their infringing wrestling event.    Further, Plaintiff has not transferred or assigned Plaintiff's Mark to Defendants or any other person or entity.

42.    Plaintiff is informed and believes, and on that basis alleges, that Defendants are using Plaintiff's Mark in interstate and global commerce in connection with the sale, offering for sale, distribution and advertising of its wrestling tournament and tournament related apparel.    For example, Plaintiff is informed and believes, and on that basis alleges, that Defendants are unlawfully profiting by continuing to sell 2016 BOTM Tournament apparel on Dearborn's Tri-Titans website: http://www.tri-titans.com/product/battle-on-the-midway-hoodies. As such, Defendants' use of Plaintiff's Mark is likely to cause confusion, mistake or deception among consumers as to the ownership, source, quality and nature of Defendants' goods and/or services.

43.    Plaintiff is informed and believes, and on that basis alleges, that Defendants' actions are willful and reflect an intent to confuse consumers and profit from the goodwill and consumer recognition associated with Plaintiff's Mark.

**PLAINTIFF HAS BEEN IRREPARABLY HARMED**

44.    Plaintiff has suffered and is continuing to suffer irreparable harm and financial injury as the result of Defendants' conduct.    The Battle on the Midway event being marketed and controlled by Defendants has been stolen from its true owner, Plaintiff.    Defendants' tournament is not subject to the same standards and controls as Plaintiff's events.    As a result, upon information and belief, Defendants' Battle on the Midway event may be of sub-standard quality, unreliable and unable to provide patrons with the same high-quality and professional experience they have come to expect will be associated with Plaintiff's events.

Case No. _____

45.    Plaintiff is informed and believes, and on that basis alleges, that consumers who have purchased or otherwise obtained Battle on the Midway goods and services provided by Defendants have or will be deceived into believing it is the same ownership and tournament and may have negative experiences with the sub-standard goods and services and have or will falsely attribute those negative experiences to Plaintiff.   This is likely to erode the substantial goodwill Plaintiff has developed since the 2016 BOTM Tournament.

46.    As of the date of this Complaint, Defendants have not ceased utilizing Plaintiff's Mark.

47.    Plaintiff is informed and believes, and on that basis alleges, that Defendants are using Plaintiff's Mark on the internet, in their businesses, and in advertising.  Defendants are using Plaintiff's Mark to market, distribute, and sell goods and services related to a "Battle on the Midway" tournament that are similar to those offered by Plaintiff.

48.    Plaintiff is informed and believes, and on that basis alleges, that Defendants have passed their goods and services off in a manner calculated to deceive Plaintiff's customers and members of the general public, and that Defendants have copied Plaintiff's Mark in an effort to confuse the public into believing that Defendants and Plaintiff are one and the same; or that Defendants are connected to and/or condoned by Plaintiff.

49.    The natural, probable and foreseeable result of Defendants' wrongful conduct has been to deprive, and it will continue to deprive, Plaintiff of the benefits of the sale of services and to deprive Plaintiff of its goodwill, and to injure Plaintiff's relations with present and prospective tournament participants, sponsors and others.

50.    Plaintiff is informed and believes, and on that basis alleges, that it has lost, and will continue to lose, substantial revenues from Defendants' use of the Plaintiff's Mark to market, distribute, and sell goods and services related to the tournament.   Defendants' wrongful conduct will also deprive Plaintiff of the

17

Case No. _____

opportunity of expanding its goodwill.

51.    Plaintiff is informed and believes, and on that basis alleges, that unless enjoined by this Court, Defendants will continue their current course of conduct, wrongfully using, infringing upon, selling and otherwise profiting from Plaintiff's Mark, likeness, marketing strategies, efforts and goodwill.

52.    As a direct and proximate result of the acts alleged above, Plaintiff has suffered irreparable damage and lost profits.  Plaintiff has no adequate remedy at law to redress all of the injuries that Defendants have caused and intend to cause by their conduct.  Plaintiff will continue to suffer irreparable damage and sustain loss of profits until Defendants' actions alleged above are enjoined by this Court.

53.    As a direct and proximate result of the acts alleged above, Plaintiff seeks damages to compensate it for lost profits and the loss of goodwill that Defendants have caused.

## FIRST CLAIM FOR RELIEF

### (False Designation of Origin and Unfair Competition in Violation of Section 43(a) of the Lanham Act – *Against All Defendants*)

54.    Plaintiff incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

55.    Defendants provide similar services in a similar manner using Plaintiff's Mark in its business, advertising, social media and website.  The goods and services provided by Defendants under Plaintiff's Mark will confuse and deceive the public into thinking that the goods sold and services provided by Defendants are Plaintiff's goods and services, or that there is some connection or affiliation between Plaintiff and Defendants.

56.    Defendants knew or should have known that their statements were false or likely to mislead.

57.    Plaintiff is informed and believes, and on that basis alleges, that Defendants' acts have injured or are likely to injure Plaintiff's image and reputation

18

Case No. _____

within and among participants, sponsors and others in the wrestling community in this judicial district and elsewhere in the world by creating confusion about, and dissatisfaction with, Plaintiff's services.

58.    Plaintiff is informed and believes, and on that basis alleges, that Defendants' acts have injured or are likely to injure Plaintiff's reputation and relations within and among participants, sponsors and others in the wrestling community in this judicial district and elsewhere in the world by causing dissatisfaction, a diminution of the value of the goodwill associated with Plaintiff's Mark, and a loss of relationships within and among participants, sponsors and others in the wrestling community in this judicial district and elsewhere in the world. Moreover, Defendants' infringing goods, products and services are likely to be inferior to those offered by Plaintiff, which will reflect negatively on Plaintiff, thus harming Plaintiff's business reputation.

59.    Defendants' advertising and promotion of the 2017 BOTM Tournament is a knowing, deliberate, intentional and willful attempt to injure Plaintiff's business, to trade on Plaintiff's reputation, to confuse or deceive participants and sponsors, and to interfere with Plaintiff's relationships within and among participants, sponsors and others in the wrestling community in this judicial district and elsewhere in the world.

60.    Defendants' acts constitutes false designation of origin, false and misleading descriptions and representations of fact, and unfair competition with Plaintiff, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

61.    As an actual and proximate result of Defendants' willful and intentional actions, Plaintiff has suffered damages in an amount to be determined at trial, and unless Defendants are enjoined, Plaintiff will continue to suffer irreparable harm and damage to its business, reputation and goodwill.

62.    Defendants' acts greatly and irreparably damage Plaintiff and will continue to do such damage to Plaintiff unless restrained by this Court as Plaintiff is without an adequate remedy at law.  Accordingly, Plaintiff is entitled to, among

Case No. _____

other things, an order enjoining and restraining Defendants from using Plaintiff's Mark.

63.    As a further direct and proximate result of Defendants' actions, Plaintiff has been damaged and will continue to sustain damage and is entitled to receive compensation arising from its lost sales, lost profits, and efforts necessary to minimize and/or prevent customer confusion, in an amount to be proven at the time of trial.  In addition, Plaintiff is entitled to disgorge Defendants' profits, and is entitled to interest and to its attorney's fees and costs incurred in bringing this action, all in an amount to be proven at the time of trial.  Plaintiff is further entitled to injunctive relief requiring Defendants to cease use of Plaintiff's Mark, and to all other and further forms of relief this Court deems appropriate.  Furthermore, Plaintiff is informed and believes, and on that basis alleges, that the actions of Defendants were undertaken willfully and with the intention of causing confusion, mistake, or deception, making this an exceptional case entitling Plaintiff to recover additional treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF

### (Unfair Competition and False Advertising Under California Business and Professions Code §§ 17200 and 17500 *et seq. – Against All Defendants*)

64.    Plaintiff incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

65.    Defendants' actions described above and specifically, without limitation, Defendants' use of Plaintiff's Mark, and confusingly similar variations thereof, in commerce to advertise, market and sell goods and services related to Plaintiff's Battle on the Midway tournaments without Plaintiff's consent constitutes trademark infringement, false advertising and unfair competition in violation of the laws of the State of California.

66.    At all times herein mentioned, Defendants had actual knowledge of the existence of Plaintiff's Mark and Plaintiff's ownership of said mark.

20

Case No. _____

67.    By these actions, Defendants have engaged in false advertising and unfair competition in violation of the statutory law of the State of California, Cal. Bus. & Prof. Code §§ 17200 and 17500 *et seq.*, and, as a result, Plaintiff has suffered and will continue to suffer damage to its business, reputation and goodwill.

68.    As a direct and proximate result of Defendants' willful and intentional actions, Plaintiff has suffered damages in an amount to be determined at trial and, unless Defendants are restrained, Plaintiff will continue to suffer irreparable damage. Further, Plaintiff is entitled to interest and to its attorney's fees and costs incurred in bringing this action, all in an amount to be proven at the time of trial.

## THIRD CLAIM FOR RELIEF

### (Violation of California Common Law for Trademark Infringement – *Against All Defendants*)

69.    Plaintiff incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

70.    Defendants' acts constitute trademark infringement of Plaintiff's trademark rights related to Plaintiff's Mark in violation of California common law.

71.    Defendants' acts greatly and irreparably damage Plaintiff and will continue to do such damage to Plaintiff unless restrained by this Court as Plaintiff is without an adequate remedy at law.  Accordingly, Plaintiff is entitled to, among other things, an order enjoining and restraining Defendants from using the BOTM Marks and further damage according to proof at trial.

72.    Defendants engaged in the foregoing conduct with oppression, fraud or malice, and acted wantonly, willfully and with reckless disregard of the rights of LCW, Mr. Root and Mr. Watson, thereby entitling Plaintiff to an award of exemplary damages in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

### (Conversion – *Against All Defendants*)

73.    Plaintiff incorporates by reference each and every allegation contained

Case No. _____

in each paragraph above and below as though the same were set forth in full herein.

74.    At all times relevant herein, Plaintiff owned, possessed, and/or had a right to possess, and still own and/or have the right to possess any and all of its tangible and intangible property and profits derived directly or indirectly therefrom, including, *inter alia*, the following:

        a.    All profits derived from 2016 BOTM Tournament apparel sales;

        b.    All unsold 2016 BOTM Tournament apparel;

        c.    All entry fees collected by Defendants on Plaintiff's behalf;

        d.    All items of Plaintiff's tangible and intangible personal property, including, without limitation, Plaintiff's pop-up tents, pull carts, apparel, iPads and other electrical equipment; Plaintiff's website (www.battleonthemidway.com); and Plaintiff's social media accounts, including Facebook and Instagram, among other internet or mediate platforms using any form of "Battle on the Midway" or likeness of Plaintiff's Mark.

75.    As described above, Plaintiff entrusted Defendants with the possession and use of these items of personal property for Plaintiff's exclusive benefit.

76.    Defendants intentionally, wrongfully and substantially converted the above personal property for their own use and for their personal benefit and gain by taking possession of Plaintiff's personal property and preventing Plaintiff from having access to the same.

77.    Plaintiff has demanded the immediate return of the above-mentioned property but Defendants failed and refused, and continues to fail and refuse, to return the property to Plaintiff.

78.    As a proximate result of these conversions, Plaintiff has been damaged in an amount to be proven at trial.

79.    Defendants' acts were willful, wanton, malicious, oppressive and done with reckless disregard of the rights of LCW, Mr. Root and Mr. Watson, thereby entitling Plaintiff to an award of exemplary damages in an amount to be determined

at trial.

## FIFTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty as a Member of LCW – *Against Mr. Le*)

80.    Plaintiff incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

81.    From late 2015 and continuing until September 21, 2016, Mr. Le was and still is a Member of LCW.  As a Member of LCW, Mr. Le owed and continues to owe fiduciary duties to LCW, including, but not limited to, the duties of loyalty and care.

82.    Mr. Le also owes continuing duties, including fiduciary duties, by virtue of the trust and confidence previously reposed in him by LCW, including, but not limited to, his prior involvement with LCW and his former role as a Member.

83.    Plaintiff, through Mr. Root and Mr. Watson, reasonably relied on the fiduciary relationship between the members created by the formation of LCW in, without limitation: (1) embarking on the planning and promotion of an international wrestling event; (2) retaining a colleague of Mr. Le to act as Plaintiff's Marketing Director and oversee all website and social media activity; (3) retain Dearborn as the tournament's apparel supplier; (4) permit Mr. Le to coordinate contracts with various vendors on behalf of LCW; (5) permit Mr. Le to register www.battleonthemidway.com on behalf of LCW; and (6) permit Mr. Le to process 2016 BOTM Tournament entry fees and apparel sales directly into his Dearborn account.

84.    Nevertheless, Mr. Le breached his fiduciary duty owed to LCW and its Members by stealing the entire business and engaging in acts adverse to Plaintiff's interest, including, but not limited to, the following conduct:

a.    Retaining and using to Plaintiff's detriment and for Defendants' benefit, Plaintiff's personal property, including, but not limited to, Plaintiff's pop-up tents, pull carts, apparel, iPads and other electrical equipment;

23

b.    Directly or indirectly causing LCW's copyright notice on www.battleonthemidway.com to be removed and replaced with Dearborn's copyright notice;

c.    Retaining and refusing to relinquish to Plaintiff, to Plaintiff's detriment and for Defendants' benefit, access to Plaintiff's website, Facebook, and Instagram accounts;

d.    Usurping company opportunities by continuing to sell 2016 BOTM Tournament apparel without remitting any proceeds to Plaintiff;

e.    Retaining and refusing to relinquish to Plaintiff, to Plaintiff's detriment and for Defendants' benefit, the entry fee funds and apparel sales Defendants processed directly into Dearborn's bank account during the 2016 BOTM Tournament;

f.    Using Plaintiff's Mark to promote the 2017 BOTM Tournament without Plaintiff's consent and for his own benefit; and

g.    Filing the USPTO Application without Plaintiff's consent and for his own benefit.

85.    As a direct result of Mr. Le's conflict of interest, disloyalty and dishonest acts, Mr. Le's breaches of fiduciary duty have proximately caused damage to Plaintiff, including Mr. Root and Mr. Watson, all in an amount to be proven at trial.

86.    Mr. Le engaged in the foregoing conduct with oppression, fraud or malice, and acted wantonly, willfully and with reckless disregard of the rights of LCW, Mr. Root and Mr. Watson, thereby entitling Plaintiff to an award of exemplary damages in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### (Declaratory Relief)

87.    Plaintiff incorporates by reference each and every allegation contained in each paragraph above and below as though the same were set forth in full herein.

24

88.    An actual controversy has arisen regarding ownership of Plaintiff's Mark.

89.    By reason of the foregoing controversy, Plaintiff respectfully requests that the Court make a judicial determination that: (a) Plaintiff's Mark is a valid trademark; (b) Plaintiff is the rightful owner of Plaintiff's Mark and that Defendants have no rights in or to Plaintiff's Mark; (c) Defendants infringed upon Plaintiff's Mark; (d) Defendants must cease the use of and return to Plaintiff Plaintiff's Mark; (e) Defendants must cease the use of and return to Plaintiff all website and social media accounts connected with "Battle on the Midway" or similar wresting tournaments, and return any and all digital images, products and marketing materials associated with Plaintiff's Mark.

90.    Such a judicial determination is necessary at this time in order for Plaintiff to resolve and settle its dispute as expressed in the instant action.

91.    Plaintiff is informed and believes, and on that basis alleges, that Defendants have taken a contrary position and have acted in a manner such that they assert they own the rights to Plaintiff's Mark which will likely result in irreparable detriment to Plaintiff.    Accordingly, an order of declaratory relief is proper and necessary.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief as follows:

1.    Defendants and their partners, officers, agents, servants, employees and attorneys, their successors and assigns, and all others in active concert or participation with Defendants, be enjoined and restrained during the pendency of this action, and permanently thereafter, from using Plaintiff's Mark and variations thereof;

2.    Defendants, and all others holding by, through or under Defendants, be required, jointly and severally, to:

DOCS 124952-000001/2822665.8                                    Case No. _____

a.  Account for and pay over to Plaintiff all profits derived by Defendants from their acts of trademark infringement, unfair competition, false advertising and breach of contract in accordance with 15 U.S.C. § 1117 and the laws of the State of California, and Plaintiff asks that this profits award be trebled in accordance with 15 U.S.C. § 1117;

b.  Pay over to Plaintiff all damages incurred by Plaintiff by reason of Defendants' acts of unfair competition, false advertising and breach of contract in accordance with 15 U.S.C. § 1117 and the laws of the State of California, and Plaintiff asks that this profits award be trebled in accordance with 15 U.S.C. § 1117;

c.  Pay to Plaintiff the costs of this action, together with reasonable attorneys' fees and disbursements, in accordance with 15 U.S.C. § 1117(a);

d.  Deliver up to Plaintiff all labels, signs, prints, packages, wrappers, websites, social media accounts and any and all other personal property, both tangible and intangible, in accordance with 15 U.S.C. § 1118;

e.  File with the Court and serve on Plaintiff an affidavit setting forth in detail the manner and form in which Defendants have complied with the terms of the injunction, in accordance with 15 U.S.C. § 1116; and

f.  Take all necessary actions to promptly rescind and cancel its pending application to register Plaintiff's Mark with the USPTO, US Serial Number 87221919, or assign all of Defendants' rights, interest and title in US Serial Number 87221919 to Plaintiff should the USPTO grant Defendants' pending application;

3.  That the Court issue a judicial determination and declaration that:

26

a.  Plaintiff's Mark is valid;

b.  Plaintiff is the rightful owner of Plaintiff's Mark and that Defendants have no rights in or to Plaintiff's Mark; and

c.  Defendants violated 15 U.S.C. § 1125(a) by unfairly competing against Plaintiff by using false, deceptive or misleading descriptions or representations of fact that misrepresent the nature, quality and characteristics of Plaintiff's goods and/or services;

d.  Defendants unlawfully and unfairly competed against Plaintiff under the laws of the State of California, Cal. Bus. & Prof. Code § 17200 *et seq.*;

e.  Defendants unlawfully and unfairly competed against Plaintiff by engaging in false or misleading advertising under the laws of the State of California, Cal. Bus. & Prof. Code § 17500 *et seq.*;

4.  That Plaintiff be granted general, special and incidental damages according to proof at trial;

5.  That Plaintiff be granted pre-judgment and post-judgment interest;

6.  For attorney's fees for wrongful, willful, and deliberate action under 17 U.S.C. § 1051, *et seq.*;

7.  That Plaintiff be granted an exemplary and punitive damages award against Defendants in an amount according to proof at trial; and

8.  For such other and further relief as the Court deems just and proper.

DATED: March 7, 2017

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: _____

John D. Alessio
Lisel M. Ferguson
Zagros S. Bassirian
Attorneys for Plaintiff
Left Coast Wrestling, LLC

27