UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

LEFT COAST WRESTLING, LLC, a
California limited liability company,

                                    Plaintiff,

v.

DEARBORN INTERNATIONAL LLC, a
California limited liability company, a/k/a
and/or d/b/a TRI TITANS; DUKE MINH
LE, an individual,

                                    Defendants.

Case No.:  3:17-cv-00466-LAB-NLS

**REPORT AND
RECOMMENDATION FOR ORDER
GRANTING DEFAULT JUDGMENT**

        Before the Court are Plaintiff's Motion to Dismiss, ECF No. 23, (referred in part as set forth in ECF No. 30) and Application for Default Judgment by Court, Permanent Injunction and Attorneys' Fees and Costs, ECF No 37 (referred as set forth in ECF No. 38).  Plaintiff also submitted Supplemental Documents for consideration.  ECF No. 40.

I.      **FACTUAL BACKGROUND**

        This case is centered on the use of "Battle on the Midway" as a trademark, and alleges claims for False Designation of Origin under the Lanham Act, with attendant state law claims including violation of the California Business & Professions Code, § 17200,

common law trademark infringement, conversion, breach of fiduciary duty and declaratory relief.  ECF No. 1.  Plaintiff alleges that "Battle on the Midway" was developed by and is a common law trademark of plaintiff, Left Coast Wrestling, LLC ("Left Coast"), an LLC of which defendant Mr. Duke Le was once a member.  *Id.* at 4.

Plaintiff alleges that Left Coast was formed for the purpose of running an annual youth wrestling tournament in San Diego with the final round to occur on the deck of the USS Midway, resulting in the title "Battle on the Midway."  *Id.*  Plaintiff alleges that it developed, marketed, planned and carried out the first tournament in 2016. *Id.* at 5-10.  Plaintiff alleges that after the first tournament, Defendants usurped Plaintiff's idea, mark, tournament, social media accounts, website and other items, and began promoting a "Battle on the Midway" tournament on behalf a "Tri Titans."  Tri Titans is the dba of defendant Dearborn International, LLC and the alleged alter ego of defendant Mr. Le (Dearborn and Mr. Le are collectively referred to as "Defendants").  *Id.* at 2-3, 12-15.

Plaintiff's complaint alleges its damages include lost profits and loss of goodwill, and seeks to enjoin Defendants from further use of "Battle on the Midway" in any capacity.  *Id.* at 17-18.  Plaintiff also requests disgorgement of any and all profits attributable to Defendants' trademark infringement, rescission of Defendant's pending USPTO trademark application, as well as attorneys' fees and costs.  *Id.* at 25-27.

## II.    PROCEDURAL HISTORY

Plaintiff's complaint was filed March 7, 2017 and served on both Defendants March 14, 2017.  ECF Nos. 1, 5.  In response, Defendants filed an answer and counterclaims.  ECF No. 8.  The parties, all represented by counsel at the time, participated in an Early Neutral Evaluation, which was unsuccessful.  ECF No. 14.  The Court issued a Scheduling Order regulating discovery and pretrial proceedings.  ECF No. 15.

A short time later, counsel for the Defendants moved to withdraw based on Defendants' "failure to communicate with counsel and breach of agreement to pay fees." ECF No. 17 at 2:9-10.  The District Judge issued an order to Defendants to respond and

explicitly advised the Defendants of the consequences of failure to do so, as well as the inability of an entity such as defendant Dearborn to proceed without counsel. ECF No. 18. Defendants did not respond and the District Judge granted the motion to withdraw. ECF No. 20.

Plaintiff proceeded to file a request for entry of default, and then a motion to dismiss Defendants' counterclaims. ECF Nos. 21, 23. The District Judge did not immediately grant the request for entry of default, and instead issued an order to show cause, again requiring written response from the Defendants and advising that failure to respond would result in the dismissal of Defendants' counterclaims and entry of default. ECF Nos. 22, 25. No response was filed.

The District Judge dismissed Defendants' counterclaims, and ordered entry of default against both Defendants. ECF No. 30, 31. In the same order, the District Judge referred the request for discovery sanctions and default judgment, to the extent it was requested as a discovery sanction pursuant to Rules 16, 37, and 41, to the undersigned. ECF No. 30. Plaintiff thereafter also moved for default judgment pursuant to Rule 55 and served the motion on Defendants by overnight delivery. ECF No. 37. This motion was also referred to the undersigned. ECF Nos. 38. Defendants did not respond to the motion and have not moved to set aside the default. The docket reflects no attempt on the part of Defendants to file any document of any kind since the motion of their prior counsel to withdraw in July of 2017. ECF No. 17 (Motion to Withdraw, filed July 31, 2017).

## III.   DISCUSSION

### A. Legal Standard for Default Judgment

Pursuant to Federal Rule of Civil Procedure 55, the Court may enter default judgment against a defendant who has "failed to plead or otherwise defend" an action. Entry of default does not "automatically entitle the plaintiff to a court-ordered judgment," granting relief remains "entirely within the court's discretion." *PepsiCo, Inc. v.*

*California Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (*citing Draper v. Coombs*, 792 F.2d 915, 924-25 (0th Cir. 1986).

## B. Entry of Default is Proper

Entry of default may be entered as either a sanction[1] or for "failure to plead or otherwise defend."  Fed. R. Civ. P. 55(a) ("When a party … has failed to plead or otherwise defend …"); Fed. R. Civ. P. 16(f)(1)(C) ("On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party … fails to obey a scheduling or other pretrial order."); Fed. R. Civ. P. 37(b)(2)(C) ("If a party ... fails to obey an order to provide or permit discovery, ... the court ... may ... render[ ] a judgment by default against the disobedient party."); *Dreith v. Nu Image, Inc.*, CV054146 SVW MANX, 2007 WL 9658786, at *3 (C.D. Cal. Mar. 2, 2007) ("A district court may enter default against a defendant as a sanction for engaging in discovery abuse."); *Adriana Intl. Corp. v. Thoeren*, 913 F.2d 1406, 1410 (9th Cir. 1990) (dismissing plaintiff's complaint, striking answers to cross claims, and entering default judgment as an evidentiary sanction after plaintiff repeatedly failed to obey discovery orders).  Where the drastic sanctions of dismissal or default are imposed, the party's non-compliance must be due to willfulness or bad faith.  *Id.* at 1412, n. 5; *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981).  All that is required to show willfulness or bad faith is "disobedient conduct not shown to be outside the control of the litigant." *Henry v. Gill Industries*, 983 F.2d 943, 948 (9th Cir. 1993).

---

[1] While the entry of default is not challenged, the Court finds it useful to address the *Malone* factors for entry of default because consideration of the *Malone* factors is required where default judgment is issued as a sanction.  *Dreith v. Nu Image, Inc.,* CV 054146 SVW MANX, 2007 WL 9658786, at *7 (C.D. Cal. Mar. 2, 2007) ("…it would either be redundant or inconsistent to apply *Eitel*'s discretionary factors where default is imposed as a sanction…[o]nce *Malone* has been met, and the Court is satisfied that the allegations of the complaint are sufficient, the *Eitel* analysis is essentially rendered moot.").

4

The Ninth Circuit employs a balancing test of five factors for the court to consider before declaring default: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Dreith v. Nu Image, Inc.*, 2007 WL 9658786, at *3 (quoting factors from *Malone v. United States Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987). "Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against a default. Therefore, it is the third and fifth factors that are decisive." *Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990).

Here, Defendants' failure to respond to discovery, appear for deposition, or otherwise meaningfully participate in the either the discovery process or comply with Court's direction to respond or oppose the Plaintiff's submissions constitutes a failure "to plead or otherwise defend" within the meanings of Rules 16 and 55. Defendants have also ignored at least two orders of this Court: the Scheduling Order (ECF No. 15) which directed the timing and compliance with discovery procedures; and the Order to Show Cause (ECF No. 25) as to why the counterclaim should not be dismissed.[2] In light of the explicit direction of the court to Defendants, on multiple occasions, explaining that Dearborn must be represented by counsel, and the consequences of failure to act, coupled with service of every motion and order upon Mr. Le, the Defendants actions can only be construed as "within their control" and thus, willful and bad faith non-compliance.

Finally, both the third and fifth *Malone* factors, risk of prejudice and availability of less drastic sanctions, weigh in favor of default. In sum, neither the Plaintiff nor the court have been able to meaningfully engage Defendants in this case. Plaintiff alleges it sent a

---

[2] Arguably, Defendants also violated the Order Directing Defendants to Respond (ECF No. 18) to their prior counsel's motion to withdraw, however, because that order directed the Defendants to respond only "if" they opposed the withdrawal, the court will give Defendants the benefit of the doubt that they did not oppose the withdrawal and were not intentionally disregarding a court order.

cease and desist letter to the Defendants prior to bringing this action, to no avail. ECF No. 1 at 14. ¶ 37. Initiation of the present lawsuit does not appear to have impacted Defendants, who refuse to participate. The orders of this court directing Defendants to respond, oppose, or otherwise take part have gone unanswered. Accordingly, there is a possibility of prejudice to the Plaintiff absent default judgment, as the Plaintiff would be left without recourse. *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d at 1177 ("[i]f Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery.") Nor is there a lesser sanction available; there is no other means remaining to the Plaintiff or the Court to persuade Defendants to respond, participate, or otherwise permit this case to proceed in the normal adversarial course.

With four factors weighing in favor entry of default, conduct within the apparent control of Defendant, and complete failure to participate in litigation, entry of default is supported by the *Malone* factors.

### C. Default Judgment

The "entry of default does not entitle the non-defaulting party to a default judgment as a matter of right." *Dreith v. Nu Image, Inc.*, 2007 WL 9658786, at \*5 (quoting *In re Villegas*, 132 B.R. 742, 746 (BAP 9th Cir. 1991)).

Here, Plaintiff requests default judgment as either (1) a sanction under Rules 16 and 37 or (2) for failure to appear and defend under Rule 55. ECF No, 37-1 at 6-8. While total failure to participate in a case and comply with the Scheduling Order is sanctionable by default judgment under Rule 16 (which incorporates all remedies provided by Rule 37), the circumstances presented in this case are more analogous to the cases wherein the defendants never appeared than those cases where discovery abuses included misleading conduct or those where defendants act in direct defiance of court orders that resulted in default judgment as a discovery sanction. *See Canon Sols. Am., Inc. v. Gungap*, SACV141990 JLS RNBX, 2016 WL 9108916, at \*4 (C.D. Cal. Feb. 8, 2016) (collecting cases, noting terminating sanctions appropriate when "misconduct includes knowingly deceiving the court with manipulated or fabricated evidence [citation

omitted], consistently violating … orders, rules, and procedures…[citation omitted], or engaging in a 'consistent, intentional, and prejudicial practice of obstructing discovery' [citation omitted]); *Schudel v. Searchguy.com, Inc.*, 07CV0695 BEN BLM, 2010 WL 1945743, at *1 (S.D. Cal. May 13, 2010) (default judgment ordered after defendant, who appeared at the pretrial conference, was ordered to appear for deposition and produce specific discovery, and failed to do so); *Dreith v. Nu Image, Inc.*, 2007 WL 9658786 at *2 (default judgment appropriate as sanction for failing to produce documents as directed at an MSJ hearing, and later appearing at pre-trial conference and again ordered to produce documents). Accordingly, the Court finds it appropriate to address default judgment in the context of Rule 55 and the *Eitel* factors.[3]

### D. *Eitel* Factors

In determining whether default judgment is appropriate, the Ninth Circuit considers the following seven factors: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). When assessing the *Eitel* factors, all factual allegations in the complaint are taken as true, except those with regard to damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Although a decision on the merits is always preferred, in this case, the *Eitel* factors weigh in favor of entering default judgment.

///

---

[3] Should the District Judge disagree and find default judgment appropriate as a sanction, consideration of the *Malone* factors (discussed above); the well pled allegations of the complaint (discussed further in Section III.D.2), and the totality of the circumstances of the case are all that need be considered. *Dreith v. Nu Image, Inc.,* 2007 WL 9658786, at *7.

### 1. Possibility of Prejudice to Plaintiff

This factor is duplicative of the *Malone* factor analyzing the risk of prejudice. As discussed, Plaintiff sent a cease and desist letter, initiated litigation, and used proper channels to seek redress. Without default judgment, Plaintiff would be prejudiced by being left without recourse for the claims alleged. *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d at 1177.

### 2. Substantive Merits and Sufficiency of the Claims

The substantive merits and the sufficiency of the claims share a close relationship and are commonly discussed together. *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d at 1175. "The Ninth Circuit has suggested that these two factors require that a plaintiff 'state a claim on which the plaintiff may recover.'" *Id.* (*quoting Kloepping v. Fireman's Fund*, C 94-2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996)).

While not dispositive to the analysis, most often when a party seeks default judgment, the defendant has not appeared and had no opportunity to challenge the complaint. In this case Defendants were represented by counsel at the outset of this case and, when presented with an opportunity to challenge the sufficiency of the complaint, submitted an answer rather than a motion to dismiss. *See* ECF No. 8. Nonetheless, the Court will review the well pled allegations, accepted as true, to ensure the substantive merits and sufficiency of the claims are adequately stated.

#### (a) Lanham Act § 43(a) Violation & Declaratory Relief

Plaintiff's first claim for relief alleges false designation of origin and unfair competition in violation of Section 43(a) the Lanham Act. ECF No. 1 at 18. Section 43(a) of the Lanham Act prohibits using in commerce in connection with goods or services "any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or

commercial activities by another person…." 15 U.S.C. § 1125(a)(1).  A mark need not be registered to be protected under Section 43(a) of the Lanham Act.  *Kendall-Jackson Winery, Ltd. v. E.&.J. Gallo Winery*, 150 F.3d 1042, 1047, n.7 (9th Cir. 1998) ("Registration is not a prerequisite for protection under § 43(a).").  However, to prevail on its claim for false designation of origin for an unregistered mark, Plaintiff still must show that "owns protectable trademark rights and that [the defendants'] activities are likely to confuse consumers as to the source of the goods."  *HTS, Inc. v. Boley*, 954 F. Supp. 2d at 942  (citing *Brookfield Commc'ns., Inc. v. West Coast Entm't Corp.,* 174 F.3d 1036, 1046 (9th Cir.1999)).  Ownership of the mark can be established by priority of use. *Sengoku Works Ltd. v. RMC Int'l, Ltd.,* 96 F.3d 1217, 1219 (9th Cir. 1996) ("the standard test of ownership is priority of use.... the party claiming ownership must have been the first to actually use the mark in the sale of goods or services.").

To state a valid claim under Section 43(a) of the Lanham Act, a plaintiff show that the defendant (1) uses a designation or false designation of origin, (2) in interstate commerce, and (3) in connection with goods or services, that (4) is likely to cause confusion, mistake or deception as to either the affiliation, connection, or association of defendant with another person, or the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person, that (5) has or will damage the plaintiff.  5 McCarthy on Trademarks and Unfair Competition § 27:13 (5th ed.).

Under Section 43(a), "the ultimate test is whether public is likely to be deceived or confused by the similarity of the marks."  *HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 942 (D. Ariz. 2013) (*citing Jada Toys, Inc. v. Mattel, Inc.,* 518 F.3d 628, 632 (9th Cir.2008)); *see also, Starbuzz Tobacco, Inc. v. Melnick*, SACV 15 0224 DOC RNBX, 2015 WL 12656925, at *3 (C.D. Cal. July 31, 2015) ("Whether the violation is called infringement, unfair competition or false designation of origin, the test is identical –whether there is a likelihood of confusion.") (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 781 (1992)); *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1159, 1166 (S.D. Cal. 2014) ("[a] claim for false designation of origin is subject to the same standard,

except a claim for false designation of origin does not require that the mark be registered.") (internal quotation omitted). "The likelihood of confusion is the central element of trademark infringement, and the issue can be recast as the determination of whether 'the similarity of the marks is likely to confuse customers about the source of the products.'" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (quoting *Official Airline Guides v. Goss,* 6 F.3d 1385, 1391 (9th Cir.1993)).

The Ninth Circuit has developed eight factors, the *Sleekcraft* factors, to analyze the likelihood of confusion: (1) the similarity of the marks; (2) the relatedness of the two companies' services; (3) the marketing channels used; (4) the strength of the plaintiff's mark; (5) the defendant's intent in selecting its mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers. *Id.* (citing *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir.1979)). The eight-factor test is "pliant." When the relevant marketing channel is the internet, the three *Sleekcraft* factors that are most relevant are: (1) the similarity of the marks; (2) the relatedness of the goods or services; and, (3) the "simultaneous use of the Web as a marketing channel." *Brookfield,* 174 F.3d at 1055 n. 16 (citing *Comp Exam'r Agency, Inc. v. Juris, Inc.,* 1996 WL 376600, *1 (C.D. Cal. Apr. 26, 1996)); *but see Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*, 638 F.3d 1137, 1148 (9th Cir. 2011) ("we did not intend *Brookfield* to be read so expansively as to forever enshrine these three factors…as the test for trademark infringement on the Internet … Depending on the facts of each specific case arising on the Internet, other factors may emerge as more illuminating on the question of consumer confusion.")

Plaintiff's complaint for violation of the Lanham Act based upon false designation of origin states a claim, establishes priority of use, and likelihood of confusion. Plaintiff alleges that Plaintiff developed and used the phrase "Battle on the Midway" to nationally and internationally promote a wrestling tournament presented by Plaintiff in 2016, primarily via the internet and social media. ECF No. 1 at ¶¶ 15, 19, 21-23. Plaintiff alleges that Defendants then used the phrase "Battle on the Midway" to nationally and

internationally promote a wrestling tournament presented by "Tri Titans," a dba of Defendants, in 2017- also primarily via the internet. ECF No. 1 at ¶¶ 29-31. The Plaintiff's complaint establishes a claim for false designation of origin by showing use of the phrase "Battle on the Midway" as being presented by Tri Titans, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of the Defendants' goods and services by Plaintiff. 15 U.S.C. 1125(a)(1)(A); *see also PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). Plaintiff also alleges damages in the form of lost sales, lost profits, loss of goodwill, and customer confusion. ECF No. 1 at ¶¶ 44-53.

These admitted allegations of the complaint also establish ownership of the "Battle on the Midway" mark through Plaintiff's first use for the 2016 tournament, and establish likelihood of confusion as the identical mark is being used to promote an identical wrestling tournament, via the same social media and internet providers. These allegations easily satisfy the three most relevant *Sleekcraft* factors identified in *Brookfield*. *Brookfield*, 174 F.3d at 1055 n. 16.

The facts of this specific case are also strongly influenced by the fifth *Sleekcraft* factor, Defendants' intent in selecting its mark, as "more illuminating on the question of consumer confusion." *Network Automation, Inc. v. Adv. Sys. Concepts, Inc.*, 638 F.3d at 1148. This factor weighs strongly in favor a finding of likelihood of confusion because both the timing of the events and use of the Plaintiff's own marketing channels (Facebook and Instagram) provides strong evidence that Defendants' intentionally aimed to confuse consumers into the belief that Defendants were the originators of the Battle on the Midway mark and tournament.

The remaining *Sleekcraft* factors are also satisfied. The degree of care likely to be exercised by consumers as to the "presenter" of a wrestling tournament is low, and the occurrence of the event as put on by Defendants in 2017 is evidence of actual confusion. *See* ECF No. 37-1 at 12. Plaintiff has established a likelihood of confusion, and a claim

under the Lanham Act. Likewise, Plaintiff adequately alleges an actual controversy exists regarding ownership of the mark and would be aided by judicial determination. *See* ECF No. 1 at 88-91.

(b) <u>California Business and Professions Code Violations & Common Law Trademark Claims</u>

The Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F. 3d 1255, 1262-63 (9th Cir. 1994) (citing *Academy of Motion Pictures Arts & Sciences v. Creative House Promotions, Inc.*, 944 F. 2d 1446, 1457 (9th Cir. 1991). "This also applies to common law trademark infringement claims." *Starbuzz Tobacco, Inc. v. Melnick*, 2015 WL 12656925, at *4; *see also, Grateful Palate, Inc. v. Joshua Tree Imports, LLC*, 220 Fed.Appx. 635, 637 (9th Cir. 2007) ("California trademark law is 'substantially congruent' to federal trademark law under the Lanham Act."); *Monte Carlo Shirt, Inc. v. Daewoo Intern. (Am.) Corp.*, 707 F.2d 1054, 1058 (9th Cir. 1983) ("A showing of likely buyer confusion as to the source, origin, or sponsorship of goods is part of a cause of action for infringement of a registered trademark," but also "applies to common-law trademark infringement claims brought under California law.").

Here, where Plaintiff's allegations as set forth above also establish priority of use and a likelihood of confusion sufficient to support a false designation of origin claim,

Plaintiff has also established claims under California common law trademark law[4] and California Business and Professions Code §§ 17200[5] and 17500.[6]

### (c) Conversion

Under California law, the elements of a conversion claim are (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or dispossession of plaintiff's property rights; and (3) damages. *Miles, Inc. v. Scripps Clinic and Research Found.*, 810 F. Supp. 1091, 1094 (S.D. Cal. 1993).

Plaintiff's complaint establishes Plaintiff's ownership and thus, right to possession of the "Battle on the Midway" mark, the websites and social media pages associated with the tournament, as well as apparel and profits derived from the 2016 tournament of which Defendants retained possession. ECF No. 1 at ¶¶ 13, 15-17, 23-25, 74-79.

### (d) Breach of Fiduciary Duty

To state a claim for breach of fiduciary duty under California law, a plaintiff must allege (1) the existence of a fiduciary relationship; (2) breach of the fiduciary duty; and (3) damage proximately caused by that breach. *Sunrider Corp. v. Bountiful Biotech*

---

[4] "To state a claim of trademark infringement under California common law, a plaintiff need allege only 1) their prior use of the trademark and 2) the likelihood of the infringing mark being confused with their mark." *Wood v. Apodaca,* 375 F.Supp.2d 942, 947–48 (N.D.Cal.2005). *See also, Juan Pollo Fran., Inc. v. B & K Pollo Enterprises, Inc.*, EDCV132010JGBSPX, 2015 WL 10695881, at *2 (C.D. Cal. Aug. 6, 2015) (same).

[5] To prevail on their unfair competition claim under Cal. Bus. & Prof.Code § 17200, *et seq.,* Plaintiffs must prove that Defendant engaged in "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

[6] To prevail on their false advertising claim under Cal. Bus. & Prof.Code § 17500, *et seq.,* Plaintiffs must prove that Defendant made a "statement," in connection with the performance of services, "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

*Corp.*, SACV 08 1339 DOC AJWX, 2010 WL 11596235, at *5 (C.D. Cal. June 4, 2010)

(*citing Roberts v. Lomanto*, 112 Cal. App. 4th 1553, 1562 (2003)).

Plaintiff alleges Mr. Le was a member of the member-managed limited liability corporation, Left Coast Wrestling, LLC. ECF No. 1 at ¶ 11. The Plaintiff's operating agreement is not a part of the record, but members of member-managed LLCs owe fiduciary duties of care and loyalty. Cal. Corp. Code § 17704.09 (a) ("The fiduciary duties that a member owes to a member-managed limited liability company and the other members of the limited liability company are the duties of loyalty and care under subdivisions (b) and (c)"); § 17701.10(c) ("an operating agreement shall not do any of the following… [e]liminate the duty of loyalty…[u]nreasonably reduce the duty of care…"). The duties of loyalty and care are enumerated by the California Corporations code as requiring members to "account to the limited liability company and hold as trustee for it any property, profit, or benefit derived by the member in the conduct … of the activities of a limited liability company" and "[t]o refrain from competing with the limited liability company in the conduct or winding up of the activities of the limited liability company." Cal. Corp. Code § 17704.09 (b) (1, 3).

Plaintiff adequately alleges that Mr. Le, at a minimum, retained entry fees and profits from the sale of apparel, all of which are alleged to have occurred during the time Mr. Le remained an active member of the LLC. ECF No. 1 at ¶¶ 11, 13, 23-26, 81-86.

The undersigned finds the substantive merits of each claim are sufficiently stated, and this factor weighs in favor of entry of default judgment.

### 3. *Sum of Money at Stake in the Action*

This *Eitel* factor examines "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. If the sum of money at stake is completely disproportionate or inappropriate, then default judgment is disfavored. *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006). When evidence is presented that shows the damages are "proportional to the harm caused" and "otherwise appropriate," this factor weighs in favor of entry of

default judgment. *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (S.D. Cal. 2010) (damages consistent with terms of contract are appropriate); *see also, Moroccanoil, Inc. v. Allstate Beauty Products, Inc.*, 847 F. Supp. 2d 1197, 1202 (C.D. Cal. 2012) (judgment amount sought pursuant to statute, 15 U.S.C. § 1117, and "consistent with the allegations in the first amended complaint" weighs in favor of default judgment).

Here, Plaintiff's complaint seeks both injunctive relief and damages under 15 U.S.C. § 1117.[7] *See* ECF No. 1. Plaintiff seeks damages in the amount of $232,755.70. ECF No. 37-1 at 9. Damages are addressed in detail in subsequent sections, but this amount is reasonable and consistent with the allegations of the complaint. *See also, Weeks v. Fresh-Pic Produce Co., Inc.*, 08CV02058 BTM WVG, 2012 WL 1815648, at *4 (S.D. Cal. May 17, 2012), *amended in part,* 08CV02058 BTM WVG, 2013 WL 990827 (S.D. Cal. Mar. 12, 2013) ("the sum of money that would be awarded is not unreasonable… the total damages award that the Court is willing to entertain [] pales in comparison to the three million dollars at issue in *Eitel*.")

///

///

---

[7] 15 U.S.C § 1117(a) states, in relevant part, "When … a violation under section 1125(a) … of this title … shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, … subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. … In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party."

### 4. *Possibility of Dispute Concerning Material Facts*

By operation of default, the material allegations of the complaint are accepted as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). Likewise, the District Judge dismissed, without leave to amend, Defendants' counterclaims. ECF No. 30 ("The Court construes their non-opposition as consent to the motion's being granted. … The Court deems their counterclaims abandoned, and DISMISSES them without leave to amend."). Finally, Defendants have refused to participate in litigation and there is no indication Defendants intend to so. The possibility of dispute is therefore remote and this factor weighs in favor of default judgment.

### 5. *Whether Default was Due to Excusable Neglect*

There is no question that Defendants were properly served and are aware of the litigation, having answered the complaint and previously participated. *See* ECF Nos. 8, 14. Defendants' refusal to participate following the withdrawal of counsel and despite direction from the District Judge cuts against any finding of excusable neglect.

### 6. *Strong Policy Favoring a Decision on the Merits*

Finally, the strong policy favoring a decision on the merits is outweighed by the other factors. *See Moroccanoil, Inc. v. Allstate Beauty Products, Inc.,* 847 F.Supp.2d 1197, 1203 (C.D. Cal. Mar. 2, 2012) ("Although default judgment is disfavored, a decision on the merits is impractical, if not impossible, when the defendant takes no part in the action"). Defendants have refused to respond, oppose, appear for deposition, or otherwise participate in this litigation, leaving a decision on the merits an "impractical, if not impossible," alternative.

Weighing all the *Eitel* factors, default judgment is appropriate under the facts and circumstances of this case. The undersigned **RECOMMENDS** the motion for default judgment be **GRANTED**.

///

**E. Damages**

Under the Lanham Act, recoverable damages include "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. §1117 (a).  Plaintiff is only required to prove Defendants' sales, not costs.  *Id; see also, Wecosign, Inc. v. IFG Holdings, Inc.,* 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012) ("had Defendants mounted a defense, they would have carried the burden of showing deductions").  The Court has discretion in awarding damages, and "[i]n assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.  If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty."  15 U.S.C. §1117 (a).  "Courts have accepted less precise estimates of damages where a defendant frustrates the discovery of a precise amount by defaulting in the action. *Wecosign, Inc. v. IFG Holdings, Inc.,* 845 F. Supp. 2d at 1084 (citing *Taylor Made Golf Co. v. Carsten Sports, Ltd.,* 175 F.R.D. 658, 662 (S.D.Cal.1997)).

Plaintiff requests damages amounting to Defendants profits (15 U.S.C. §1117 (a)) in the amount of $232,755.70.  ECF No. 37-1.  The Plaintiff's requested damages are calculated as follows:

- 2016 Tournament
  - $11,614  The amount of door sales paid via credit card at the 2016 tournament but not relinquished to Plaintiff.  ECF No. 37-2 at ¶ 13, Ex. 5.
  - $22,500  Estimated merchandise sales based on "observations of merchandise purchases and attendees at the time."  ECF No.37-2 at ¶14; ECF No. 40-2 at ¶ 18.
- 2017 Tournament
  - $81,015 Online registration through TrackWrestling.  ECF No. 37-2 at

17

¶ 15.

- o $63,704 Estimated cash ticket sales at the door. ECF No. 37-2 at ¶ 16.
- o $17,537 Estimated credit ticket sales at the door. ECF No. 37-2 at ¶ 16.
- o $33,975 Estimated merchandise sales. ECF No. 37-2 at ¶ 16.
- Other Property
  - o $2,407.70 conversion of personal property (purchase for the 2016 tournament) including ipads and pop-up tents. ECF No. 37-2, at ¶¶ 11-18, 29; ECF No. 40-2 at ¶¶ 21-22.

Plaintiff is able to prove only some of these amounts requested. Plaintiff's damages for conversion of the ipads and pop up tents are supported and should be recovered ($2,407.70); as should the credit card door payments from 2016 ($11,614), and the 2017 online registration amounts ($81,015).

The remaining amounts, including merchandise for 2016 and 2017, and 2017 door sales (cash and credit) are speculative. However, Plaintiff does not request the Court treble damages, and points to Defendants' failure to participate in discovery as the basis for the estimation of various amounts. ECF No. 37-1 at 12. Defendants' failure to participate has frustrated Plaintiff's ability to prove profits with precision, and so the undersigned recommends accepting reasonable estimates.

Plaintiff was able to identify a 51% increase in registration for the tournament between the years 2016 and 2017 in via Track Wrestling (2016=$53,581 pre-registration fees paid, ECF No. 37-2 at ¶ 11; 2017=$81,015 pre-registration fees paid, ECF No. 37-2 at ¶ 15). Plaintiff applied that increase to the ticket sales from 2016 to estimate the 2017 ticket sales. This is a reasonable estimate because increased attendance of wrestling teams/participants registered to attend is likely to have a correlating increase in parents/others that purchase tickets to view the tournament.

Plaintiff's estimate of merchandise sales presents a different picture. Plaintiff estimates $22,500 of merchandise sales in 2016 "based on observations of merchandise purchases and attendees at the time." ECF No. 37-2 at ¶ 14; ECF No. 40-2 at ¶ 18. This

amount is speculation.  Again, Defendants' failure to participate in discovery makes it impossible for Plaintiff to prove merchandise sales with any certainty, Plaintiff does not provide enough evidence or support to substantiate merchandise sales at this volume/price for the 2016 year.  Likewise, a 51% increase in merchandise sales based solely upon increased registration is speculative, particularly when purchasers from the prior year are unlikely to re-purchase merchandise.  The undersigned finds this particular item lacks proper support and recommends no damages for the sale of merchandise be granted.

The undersigned therefore recommends damages be awarded in the amount of **$176,277.70.**[8]

## F. Costs

The Lanham Act also provides for the recovery of "costs" and "reasonable attorneys' fees" in "exceptional cases."  15 U.S.C. § 1117(a).  Plaintiff requests a total of $65,107.51 as the total costs and fees, and identifies $4,639.50 as costs.  ECF No. 37-1 at 23; ECF No. 37-2 at ¶ 28.

Costs are recoverable by the plain language of the Lanham Act but Plaintiff's submission does not make clear that the costs sought are only those permitted under Rule

---

[8] Calculated as follows (via excel spreadsheet):

| | |
|---|---|
| 2016 Merchandise | $0.00 |
| 2016 Credit door sales | $11,614.00 |
| 2017 Registration | $81,015.00 |
| 2017 Cash door sales | $63,704.00 |
| 2017 Credit door sales | $17,537.00 |
| 2017 Merchandise | $0.00 |
| Conversion property | $2,407.70 |
| | $176,277.70 |

54 and Local Rule 54.1.  Plaintiff appears to have simply identified all items billed as "expenses" as recoverable costs.  This is not proper.  For instance, the Court is unaware of any authority that permits the recovery of "ESI and Document Processing" fees incurred as "costs" permissible under Rule 54.  Costs has a specific defined meaning and encompasses only certain items, Plaintiff bears the burden of complying with Local Rule 54.1.  The Plaintiff may submit a bill of costs consistent with Local Rule 54.1 by **June 8, 2018**.

### G. Attorneys' Fees

For an award of attorneys' fees, the court must examine the "totality of the circumstances" to determine if the case is exceptional.  *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd. ("SunEarth"),* 839 F.3d 1179, 1181 (9th Cir. 2016).  To examine the totality of circumstances, the Ninth Circuit directs courts to use equitable discretion under the "nonexclusive factors" set forth in *Octane Fitness, LLC v. ICON Health & Fitness, Inc. ("Octane Fitness"),* 134 S. Ct. 1749, 1756 (2014) and *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 (1994) to evaluate whether the case is exceptional and substantiates an award of fees. *SunEarth,* 839 F.3d at 1181.  These factors include:  (1) the substantive strength of a party's litigating position (considering both the governing law and the facts of the case); (2) the unreasonable manner in which the case was litigated; (3) frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), and (4) the need in particular circumstances to advance considerations of compensation and deterrence.  *Octane Fitness,* 134 S. Ct. at 1756, n.6 (citing *Fogerty v. Fantasy, Inc.,* 510 U.S. at 534).

Under the totality of the circumstances this case is exceptional and warrants an award of attorneys' fees.  There is no dispute that Mr. Le was part of Left Coast Wrestling in 2016 and an active participant in the promotion and execution of the 2016 Battle on the Midway Tournament.  ECF No. 1 at ¶¶ 11-15.  By operation of default, Defendants have admitted that Defendants then mounted a competing tournament at the same location, during the same time, using the same mark and marketed to the Plaintiff's

2016 participants via the Plaintiff's social media accounts. ECF No. 1 at ¶¶ 15-43. These admissions demonstrate, legally and factually, the substantive strength of the Plaintiff's position, while Defendants fail to take a "litigating position" at all. *Octane Fitness,* 134 S. Ct. at 1756. Defendants' refusal to participate in litigation is an undoubtedly "unreasonable manner" in which to litigate, and an award of fees is likely to deter this type of conduct in the future. *Id.*

Alternatively, an award of fees, particularly those related to depositions and other discovery that went unanswered, is appropriate as a discovery sanction under Rules 16 and 37(d). However, where, as here, the undersigned finds that all fees are properly recovered due to the extraordinary nature of the Defendants early participation and then knowing, willful abandonment of the ongoing litigation, there is no reason to separate a fee award related to discovery.

Plaintiff requests $65,107.51 of attorneys' fees and costs and submits invoices for services rendered from February through December of 2017. The fees requested include $50,107 of billing invoiced through January 2018 for a total of 203 hours, and estimates $15,000 in additional fees incurred in February (including the cost of drafting the motion for default judgment). ECF no. 37-1 at 23.

"[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Hensley*, 461 U.S. at 437 ("the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rate"). Plaintiff must demonstrate that the hourly rates requested are reasonable vis-à-vis the rates charged in "the forum in which the district court sits." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205–06 (9th Cir. 2013).

Upon review of the invoices submitted for February through December 2017, the hours expended on this case are properly documented and appear reasonable. Plaintiff submits the declaration of counsel as evidence of the reasonableness of the rates

requested and as in line with rates in the community and district. ECF No. 37-2 at ¶ 22-24, Exs, 8-11. The Court finds that fees in the amount of $50,107.00 for the invoiced time in 2017 are supported.

Plaintiff also estimates $15,000 of fees would be incurred in 2018. While $15,000 is a reasonable estimate of fees likely incurred in 2018, in light of the Plaintiff's need to submit a cost bill, the Court will also direct the Plaintiff to submit invoices for 2018 to the undersigned for review by **June 8, 2018**, and the Court will issue a brief further recommendation to District Judge related to additional supported fees and costs. At this time, the undersigned recommends an award of $50,107.00 in fees.

### H. Permanent Injunction

The Lanham Act gives the court "power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation" of a mark holder's rights. 15 U.S.C. § 1116(a). A plaintiff is not automatically entitled to an injunction simply because it proves its affirmative claims. *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (citing *Pyrodyne Corp. v. Pyrotronics Corp.,* 847 F.2d 1398, 1402 (9th Cir.1988) ("[T]he grant of injunctive relief is not a ministerial act flowing as a matter of course.")). To obtain a permanent injunction, the Plaintiff must demonstrate that (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) a remedy in equity is warranted in light of the balance of hardships between Plaintiff and Defendants; and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Court's "decision to grant or deny permanent injunctive relief is an act of equitable discretion." *Id.* In determining whether an injunction is appropriate, the Court must also determine whether it is "absolutely clear" that Defendant's wrongful behavior "could not reasonably be expected to recur." *PepsiCo*, 238 F. Supp. 2d at 1178 (citing *Friends of the Earth, Inc., v. Laidlaw Env. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).

In this case, it is not "absolutely clear" that the Defendants' conduct has ceased and could not be expected to recur; to the contrary, Defendants' conduct appears to be ongoing despite Plaintiff's efforts. Considering the ongoing behavior coupled with the failure to participate in litigation, there is a reasonable expectation that Defendants will continue the behavior in question.

### 1. *Irreparable Injury and Inadequate Remedies at Law*

"The terms 'inadequate remedy at law' and 'irreparable harm' describe two sides of the same coin. If the harm being suffered by plaintiff as a result of the defendant's continuing illegal conduct (such a trademark infringement) is 'irreparable,' then the remedy at law (monetary damages) is 'inadequate.'" 5 McCarthy on Trademarks and Unfair Competition § 30:2 (5th ed.).

While irreparable harm was once presumed in meritorious trademark infringement actions, "irreparable harm now '<u>must be demonstrated</u> to obtain a permanent injunction in a trademark infringement action.'" *LG Corp. v. Huang*, 16-CV-1162 JLS (NLS), 2017 WL 476539, at *11 (S.D. Cal. Feb. 6, 2017) (emphasis in original) (quoting *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1248–49 (9th Cir. 2013)). Irreparable harm requires evidence of intangible injury which can be demonstrated by "a loss of control over and harm to its goodwill and reputation," (*Anhing Corporation v. Thuan Phong Company Limited*, 2015 WL 4517846, *23 (C.D. Cal. 2015), appeal dismissed, (9th Cir. 15-56596) (Oct. 14, 2016)) and/or that infringing sales "will cause [p]laintiffs lost profits and customers, as well as damage to goodwill and business reputation" (*LG Corp. v. Huang*, 2017 WL 476539, at *12).

Here, Plaintiff's complaint alleges loss of control of its business and marketing/social media sites, as well as lost and/or confused customers, and that Defendants are improperly trading upon the goodwill built at the first tournament by use of discount codes to participants from the 2016 event. ECF No. 1 at ¶¶ 29-34, 38-53; ECF No. 37-2 at ¶¶ 5, 19. These intangible and ongoing harms are difficult to impossible to calculate or adequately compensate. *See* 5 McCarthy on Trademarks and Unfair

Competition § 30:2 (5th ed).[9]  These factors weigh in favor of a permanent injunction.

## 2. *Balance of Hardships*

The balance of hardships examines whether the harm to Plaintiff in the absence of an injunction outweighs the harm to Defendant as the result of one.  *Anhing Corp. v. Thuan Phong Co. Ltd.*, CV1305167BROMANX, 2015 WL 4517846, at *24 (C.D. Cal. July 24, 2015).  Where, as here, the injunction seeks to halt willful trademark infringement and gain Defendants' compliance with the law, there is no hardship.  *LG Corp. v. Huang*, 16-CV-1162 JLS (NLS), 2017 WL 476539, at *11–12 (S.D. Cal. Feb. 6, 2017) ("refraining from willful trademark infringement and counterfeiting imposes no hardship on the infringing party"); *see also, E. & J. Gallo Winery v. Consorzio del Gallo Nero,* 782 F.Supp.472, 475 (N.D.Cal. 1992) ("Use of an infringing mark, in the face of warnings about potential infringement, is strong evidence of wilful (*sic*) infringement."); *Audi AG v. D' Amato,* 469 F.3d 534, 550 (6th Cir. 2006) (noting that a defendant suffers no hardship in merely "refraining from willful trademark infringement").  This factor weighs in favor of a permanent injunction.

---

[9] McCarthy on Trademarks states in relevant part:  "Irreparable harm" for a final injunction in trademark infringement cases usually flows from the fact that the trademark owner has already proven a likelihood of confusion. The likelihood of confusion will continue and deprive the consuming public of a truthful marketplace. This also means the trademark owner's business reputation and goodwill are in jeopardy. If it is likely that confused persons will mistakenly attribute to plaintiff defects or negative impressions they have of defendant's goods or services, then the plaintiff's reputation (and its signifying trademark) is at risk because it is in the hands of a stranger. This stranger has obtained control over the trademark owner's reputation by illegal means. The Sixth Circuit observed that without a permanent injunction, the trademark owner will be irreparably harmed by confused consumers buying from the infringer.
Injury to the trademark owner's reputation and good will as well as to consumer expectations is difficult, if not impossible, to adequately compensate for after the fact. If a defendant has been found to be committing acts which constitute trademark infringement, there seems little doubt that the continuing injury to good will and reputation is "irreparable" and that money damages are "inadequate" to compensate plaintiff for continuing acts of infringement.

### 3. Public Interest

The fourth factor requires Plaintiff to show that a permanent injunction serves the public interest. "The public has an interest in avoiding confusion between two companies' products." *Internet Specialties W., Inc. v. Milon–DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n.5 (9th Cir. 2009); *see also, Anhing Corp. v. Thuan Phong Co. Ltd.*, CV1305167BROMANX, 2015 WL 4517846, at *24 (C.D. Cal. July 24, 2015) ("the public has a strong interest in being free from deception and confusion").

To the extent there is any discernable public interest that weighs against the issuance of a permanent injunction, it is that the issuance of a permanent injunction at this time may interfere or cause disruption for the attendees of the event slated to occur over the summer of 2018. The Court will address this concern through the scope of and terms of the injunction. *Anhing Corp. v. Thuan Phong Co. Ltd.*, 2015 WL 4517846, at *24 (tailoring scope of injunction to address public interest in fair use while preventing infringement). However, any disruption to the event is outweighed by "the public interest in maintaining vigorous protection for intellectual property rights…." *T-C Forum at Carlsbad, LLC v. Thomas Enterprises, Inc.*, 16-CV-2119 DMS (BGS), 2017 WL 3492159, at *3 (S.D. Cal. Aug. 14, 2017).

### 4. Scope of Injunction

Injunctions must be tailored to address only the specific harm suffered by the injured party. *E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1297 (9th Cir. 1992) ("While recognizing the district court's considerable discretion in fashioning the terms of an injunction, we must insure that it is tailored to eliminate only the specific harm alleged. An overbroad injunction is an abuse of discretion."). Injunctions should also not be "so narrow as to invite easy evasion." *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1116 (9th Cir. 2012) (quoting *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 193 (1949)).

"In a clear case, the court has power to enjoin an act, which if done alone could be legal, but when performed in the context of a totality of acts does constitute unfair

competition." 5 McCarthy on Trademarks and Unfair Competition § 30:4 (5th ed.) (citing *U.S. v. Loew's, Inc.*, 371 U.S. 38, 53 (1962), *abrogated on other grounds by Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006) ("Some of the practices which the Government seeks to have enjoined … are acts which may be entirely proper when viewed alone. To ensure, however, that relief is effectual, otherwise permissible practices connected with the acts found to be illegal must sometimes be enjoined.")  While normally holding a competing summer youth wrestling tournament at a specific San Diego location, done alone, would constitute a legal act, the totality of the circumstances presented by this case present a clear case of unfair competition.   Plaintiff's complaint and case centers on a prior member of Left Coast Wrestling, LLC absconding from the company with control of its social media and thus, access to its customers, as well as possession of money and products belonging to Plaintiff and then using them to re-create and takeover a summer wrestling tournament at the same location during the same time period.  *See* ECF No. 1.  By default and admission, as well as Defendants' failure to participate in the adversarial process, the case before this Court is clear.  A tailored permanent injunction is proper.

The Plaintiff's requested injunction is extensive, and seeks to, essentially, take back the tournament and preclude Defendants from creating another competing tournament in the same location during the same time period:

> Plaintiff respectfully requests this Court to issue the following injunctive relief to remedy the harm now and into the future. Defendants, its officers, directors, owners, employees, agents, and all those working in concert with Defendants shall be ordered to and permanently enjoined from the following:
> a. Using in any form or fashion, the phrase or trademark "Battle on the Midway";
> b. Defendants shall release all right and claim in the trademark "Battle on the Midway" or its derivatives and cooperate with the withdrawal of the same;
> c. Defendants shall immediately return to Plaintiff by

facilitating the transfer of the rights with the host company or otherwise, any and all media related intellectual property of Plaintiff, including without limitation,

    i. The Battle on the Midway Facebook page and account together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

    ii. The Battle on the Midway Instagram page and account together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

    iii. Any and all web hosting accounts associated with the Battle on the Midway together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

    iv. Any and all customer relationship management (CRM) systems and databases together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

    v. Any and all URL hostings and URL listings associated with the Battle on the Midway together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

    vi. Any and all third party data sets from any partners associated with the Battle on the Midway, including TrackWrestling databases, together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

    vii. Any and all Battle on the Midway tournament registration databases in any form, together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

    viii. Any and all e-commerce accounts related to the Battle on the Midway website, together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

d. Defendants shall immediately cease, desist and disable any cross links from the Battle on the Midway website or search terms to Defendants' websites or social media portals and locations;

e. Defendants shall immediately return to Plaintiff via electronic format and thereafter permanently delete and cease the use of any and all trade secret or proprietary information of Plaintiff including without limitation any and all databases that include contact information for attendees, spectators, vendors and other contacts developed for the 2016 or 2017 wrestling events together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

f. Defendants shall immediately return to Plaintiff any and all products belonging to LCW, including products with the Battle on the Midway logo; and,

g. Defendants shall immediately cease from coordinating, promoting, or hosting wrestling tournaments at or near the U.S.S. Midway Museum and/or the Broadway Pier and shall be permanently enjoined from directly or indirectly performing wrestling tournaments at that finite location.

ECF No. 37 at pp. 3-5.

The scope of the injunction requested by Plaintiff largely addresses the harm alleged, however, the undersigned recommends some additional tailoring to certain sections, each of which are addressed.

As it stands, the Plaintiff put on its "Battle on the Midway" tournament in 2016. Defendants hosted a confusingly similar tournament in 2017 at the same location. Plaintiff as the common law holder of the trademark based on priority of use, should be permitted the opportunity to clearly and firmly establish its tournament free from *unfair* competition. *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2238 (2014) ("…the Lanham Act protects commercial interests against unfair competition…"). However, a permanent injunction that is forever binding upon Defendant's ability to hold a competing tournament at that location is closer to antitrust than the Lanham Act's intended purpose to prevent unfair competition in transparent marketplace for consumers. The undersigned therefore recommends the injunction related to Defendants' ability to host a competing tournament be limited to a period of three years.

///

Plaintiff also requests that Defendants be forced to return and "permanently delete and cease the use of any and all trade secret or proprietary information of Plaintiff including without limitation any and all databases that include contact information for attendees, spectators, vendors, and other contacts developed for the 2016 or 2017 wrestling event." This term is overbroad, particularly as to vendors, and vague as to "other contacts developed." While enjoining the Defendants from a summer wrestling tournament on the Midway and Broadway Pier for a period of years is appropriate, preventing Defendants from contact with vendors could prevent Defendants hosting any wrestling tournament in all of San Diego County. The Lanham Act is intended to prevent *unfair* competition, not *any* competition. The undersigned recommends this term be adjusted to delete reference to "vendors, and other contacts developed" as vague and overbroad. In order to prevent continuing sale of infringing items, Defendant will be ordered to provide a copy of the Court's permanent injunction and order to all distributors, wholesalers, retailers or other agents participating in the marketing and distribution of infringing products. Additionally, it is not clear what "trade secret or proprietary information" might be included other than the customer lists. If Plaintiff was aware of other trade secret or proprietary information believed to be in Defendants' possession, it should be identified. To ensure specificity and appropriate tailoring, the undersigned recommends this term be modified to include only the attendees and spectators of the events. While the undersigned recommends Plaintiff's language requiring Defendants to permanently delete and cease the use of Plaintiff's customer list, the Court is mindful that to the extent the attendees are high school or club wrestling teams with publicly available contact information, Defendants are not prohibited from contact or development of their own list and any such contact would not violate the injunction.

Plaintiff requests the transfer of social media and websites associated with Battle on the Midway, such as Instagram, facebook, web hosting, URL's, customer relationship management databases, "third party data sets," event registration databases, and e-

commerce accounts. Plaintiff also requests that "any cross links from the Battle on the Midway website or search terms to Defendants' websites or social media portals and locations." The takeover of some of these accounts, specifically the Instagram and facebook pages, URL, and web hosting associated with "Battle on the Midway" are alleged directly in the complaint. ECF No. 1 at 5, ¶¶ 15(b), 16-17, 29-30, 38-39. It is appropriate that the injunction address these items as they are tailored to the address the specific harm suffered. *E. & J. Gallo Winery v. Gallo Cattle Co.,* 967 F.2d at 1297. Similarly, harms that flow directly from that website and social media takeover, including disabling any cross links that direct to Defendants' website(s) as the result of searching for "Battle on the Midway" are appropriately tailored and within the scope of the injunction.

Other harms are also directly alleged in the complaint, including the use of Plaintiff's mark to conduct the 2017 event, and that Defendants continue to direct searches for "Battle on the Midway" to Defendants' "Ultimate Summer Series" website and 2018 infringing event. ECF No. 1 at ¶¶ 44-48; ECF No. 37-2 at ¶¶ 4, 19. For this reason, an injunction that directs the turnover of any Battle on the Midway registration database is also within the scope of an appropriately tailored injunction because any such registrants were past participants or found the tournament via social media or by searching "Battle on the Midway" and were re-directed to Defendants' site. The Court finds it appropriate to include an order that Defendants be required to post the Court's final order and permanent injunction on the "Ultimate Summer Series" website, www.ultimatesummerseries.com, to inform and advise participants of the ownership of the "Battle on the Midway" mark.

However, some of the requests are vague and overbroad. For instance, "third party data sets from any partners" is unclear as to what constitutes a third party, a partner, and/or a data set. The undersigned recommends limiting the scope of this request to only any TrackWrestling database associated with Battle on the Midway.

///

Plaintiff also requests "any and all customer relationship management (CRM) systems and databases" without limitation. This term is overbroad and appears to be duplicative of the information that will be produced as part of the "Battle on the Midway tournament registration databases." It is recommended the CRM database be excluded from the injunction.

Finally, Plaintiff requests any e-commerce account associated with the Battle on the Midway website be transferred. Plaintiff's complaint makes clear that Defendant has a separate apparel company that was once the official sponsor of the event. It is not clear that any ecommerce account would include funds related solely to the tournament in question. Because it is recommended that unpaid funds from the 2016 event and sales/profits from the 2017 event be disgorged under the terms of the Lanham Act as part of the default judgment, there is no reason for Defendants to turn over any e-commerce account. It is recommended this term be excluded from the injunction.

Accordingly, the undersigned recommends the following injunction be entered:

> Defendants, its officers, directors, owners, employees, agents, and all those working in concert with Defendants shall be ordered to and permanently enjoined from the following:
> a. Using in commerce, the phrase or trademark "Battle on the Midway";
> b. Defendants shall release all right and claim in the trademark "Battle on the Midway" or its derivatives and cooperate with the withdrawal of the same;
> c. Defendants shall immediately return to Plaintiff by facilitating the transfer of the rights with the host company or otherwise, any and all media related intellectual property of Plaintiff, including without limitation,
>   i. The Battle on the Midway Facebook page and account together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;
>   ii. The Battle on the Midway Instagram page and account together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

iii. Any and all web hosting accounts associated with the Battle on the Midway together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

iv. Any and all URL hostings and URL listings associated with the Battle on the Midway together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

v. Any TrackWrestling databases associated with the Battle on the Midway, including together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

vi. Any and all Battle on the Midway tournament registration databases in any form, together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

d. Defendants shall immediately cease, desist and disable any cross links from the Battle on the Midway website or search terms to Defendants' websites or social media portals and locations;

e. Defendants shall post a copy of this Order and Permanent Injunction on the Ultimate Summer Series Website (www.ultimatesummerseries.com);

f. Defendants shall provide a copy of this Order and Permanent Injunction to all distributors, wholesalers, retailers or other agents participating in the marketing and distribution of infringing products;

e. Defendants shall immediately return to Plaintiff via electronic format and thereafter permanently delete and cease the use any and all databases that include contact information for attendees or spectators for the 2016 or 2017 wrestling event together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

f. Defendants shall immediately return to Plaintiff any and all products belonging to LCW, including products with the Battle on the Midway logo; and,

g. Defendants shall immediately cease from coordinating, promoting, or hosting wrestling tournaments at or near the U.S.S. Midway Museum and/or the Broadway Pier and shall

be enjoined from directly or indirectly performing wrestling tournaments at that finite location **for a period of three years**.

## I. Declaratory Relief

Finally, Plaintiff requests the Court issue a "clarifying order establishing Defendant Le has forever forfeited and released any and all rights to membership as an owner or otherwise in Left Coast Wrestling, LLC effective September 2016 at which time he indisputably began directly competing with Left Coast Wrestling breaching his fiduciary duties and violating the other laws as alleged in the Complaint."

Under the California Corporations Code, a "person has the power to dissociate as a member at any time, rightfully or wrongfully, by withdrawing as a member by express will…." Cal. Corp. Code Ann. § 17706.01(a). A person can be dissociated as a member of a limited liability company under several circumstances enumerated in subdivisions of the California Corporations Code §17706.02, including those relevant here:

> (a) The limited liability company has notice of the person's express will to withdraw as a member…
> (e) On application by the limited liability company, the person is expelled as a member by judicial order because the person has done any of the following:
> (1) Engaged, or is engaging, in wrongful conduct that has adversely and materially affected, or will adversely and materially affect, the limited liability company's activities. …
> (3) Engaged, or is engaging, in conduct relating to the limited liability company's activities that makes it not reasonably practicable to carry on the activities with the person as a member.

By operation of default, Mr. Le admitted that as of September 22, 2016 he sent a text message to the other members stating, "I do not have the time or energy to be a director within LCW. I will leave it to you both, Perry and Aaron to continue with BOTM on your own accord." ECF No. 1 at 11, ¶ 26. This appears to constitute notice of express will to withdraw as a member, however, Mr. Le's use of the term "director" as opposed to

33

"member" leaves some ambiguity.  Conversely, there is no ambiguity that Mr. Le's mounting of a competing tournament by use of the marks, customers, and contacts of the Plaintiff constitutes wrongful conduct that has and continues to affect Plaintiff's activities and that Mr. Le's conduct makes it not reasonably practicable for Plaintiff to carry out activities with Mr. Le as a member.  The undersigned therefore **RECOMMENDS** a judicial order expelling Mr. Le as a member as of September 30, 2016.

## IV.    RECOMMENDATION

Consistent with the analysis as set forth above, the undersigned **RECOMMENDS** the following:

1.  The motion for default judgment be **GRANTED**;

2.  Defendants are **ORDERED** to pay:

    a.  Damages in the amount of $176,277.70;

    b.  Costs in an amount to be determined upon submission of a costs bill;

    c.  Attorneys' Fees in the amount of $50,107.00, plus an amount to be determined upon submission of 2018 fees;

3.  A permanent injunction issue with the following terms:

    Defendants, its officers, directors, owners, employees, agents, and all those working in concert with Defendants shall be ordered to and permanently enjoined from the following:

    a.  Using in commerce, the phrase or trademark "Battle on the Midway";

    b.  Defendants shall release all right and claim in the trademark "Battle on the Midway" or its derivatives and cooperate with the withdrawal of the same;

    c.  Defendants shall immediately return to Plaintiff by facilitating the transfer of the rights with the host company or otherwise, any and all media related intellectual property of Plaintiff, including without limitation,

        i.  The Battle on the Midway Facebook page and account together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

34

ii. The Battle on the Midway Instagram page and account together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

iii. Any and all web hosting accounts associated with the Battle on the Midway together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

iv. Any and all URL hostings and URL listings associated with the Battle on the Midway together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

v. Any TrackWrestling databases associated with the Battle on the Midway, including together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

vi. Any and all Battle on the Midway tournament registration databases in any form, together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

d. Defendants shall immediately cease, desist and disable any cross links from the Battle on the Midway website or search terms to Defendants' websites or social media portals and locations;

e. Defendants shall post a copy of this Order and Permanent Injunction on the Ultimate Summer Series Website (www.ultimatesummerseries.com);

f. Defendants shall provide a copy of this Order and Permanent Injunction to all distributors, wholesalers, retailers or other agents participating in the marketing and distribution of infringing products;

g. Defendants shall immediately return to Plaintiff via electronic format and thereafter permanently delete and cease the use any and all databases that include contact information for attendees or spectators for the 2016 or 2017 wrestling event together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same;

35

h. Defendants shall immediately return to Plaintiff any and all products belonging to LCW, including products with the Battle on the Midway logo; and,

i. Defendants shall immediately cease from coordinating, promoting, or hosting wrestling tournaments at or near the U.S.S. Midway Museum and/or the Broadway Pier and shall be enjoined from directly or indirectly performing wrestling tournaments at that finite location **for a period of three years**.

4. An order that Mr. Le is expelled as a member from Left Coast Wrestling, LLC effective as of September 30, 2016.

## V. CONCLUSION

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636.

**IT IS ORDERED** that no later than **June 8, 2018**, any party to this action may file written objections and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections must be filed and served on all parties no later than **June 15, 2018**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: May 23, 2018

Hon. Nita L. Stormes
United States Magistrate Judge

3:17-cv-00466-LAB-NLS