UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEFT COAST WRESTLING, LLC,<br><br>                                      Plaintiff,<br>v.<br>DEARBORN INT'L LLC,<br>                                      Defendant. | Case No.: 17cv466-LAB (NLS)<br><br>**ORDER DENYING WITHOUT PREJUDICE MOTION TO AMEND JUDGMENT** |

    This case concerns a youth wrestling tournament and intellectual property rights associated with it.

    After the Court entered judgment for Plaintiff Left Coast Wrestling, counsel for Left Coast began contacting chambers and referring to a need for emergency relief. Counsel first requested a hearing date for a motion to hold Defendants Dearborn International, LLC and Duke Minh Le in contempt. But rather than file that, on July 19 they filed a lengthy *ex parte* Motion (Docket no. 50) seeking to amend the judgment. The Motion characterizes the situation as urgent and requests that the Court grant its motion by July 25.

    The 18-page Motion is supported by a 10-page declaration and 59 pages of exhibits. It seeks new and different relief based on events that have occurred from May of this year onward.

///

1

Defendants' youth wrestling tournament is to be held from July 27 through 29.  In brief, the Motion says Defendants moved the tournament to a new location two miles away and changed the name and web address, but are using different means to cause confusion between their tournament and the Battle on the Midway. It also alleges that Defendants are not complying with the Court's order, and identifies a number of things Defendants were ordered to do that they have not done. And it characterizes Defendants' behavior and attitudes as hostile to both Left Coast and the Court's rulings.  The way to deal with this, the Motion urges, is to change the wording of the Court's order, and to do so right away. If not, the Motion says, Defendants will be rewarded for their unlawful conduct not only in 2018, but into the indefinite future.

Although the Motion includes frantic and alarmist language, nothing about the situation suggests the Court should act in haste.

First, Left Coast has known about the tournament for quite some time. Although the Motion tries to characterize Left Coast as waiting on a dilatory court,[1] the truth is that Left Coast has not treated the issue as urgent.   On August 31, 2017, after warning Dearborn and Le about the consequences, the Court granted Defendants' counsel's request to withdraw. On October 19, Left Coast requested entry of default against Dearborn, merely because it was unrepresented. The Court denied the request, pointing out that entry of default was reserved for defendants who had not appeared (which did not apply), or who had failed to defend. The Court's order pointed out that failure to defend had not been addressed, but permitted Left Coast to file another request for default, or to seek discovery sanctions if Dearborn was failing to comply with its discovery obligations.

Left Coast then on December 12 moved to dismiss Dearborn's and Le's counterclaims and to enter "default" on the complaint.  The Court issued an order pointing out that the motion conflated entry of default with default judgment. It ordered Dearborn

---

[1] "Plaintiff patiently waited over a year to allow the justice system to speak."  (Motion at 1:9–10.)

and Le to show cause why default should not be entered against them. It also construed Left Coast's motion as requesting default judgment solely as a sanction for discovery abuse. After ordering Defendants to respond and receiving none, the Court on January 16, 2018 directed an entry of default, and referred the discovery sanction issue to Magistrate Judge Stormes.

On January 9, Left Coast had filed a motion for a protective order concerning the confidentiality of discovery, and Magistrate Judge Nita Stormes set a briefing schedule for it.

Then on February 16, Left Coast filed a motion for default judgment against Le and Dearborn, citing their failure to respond to various orders and for discovery abuses. Because the motion sought default judgment both for failure to defend and for discovery abuse, it was referred to Judge Stormes, whose duties include overseeing discovery, for a report and recommendation.

Judge Stormes on May 23 issued an initial report and recommendation, as well as a supplemental report and recommendation concerning costs and attorney's fees. After the time for objections passed, the Court adopted it, entered default judgment, and directed Left Coast to submit a proposed order that included the relief outlined in the two reports and recommendations. The Court, after reviewing the proposed order to confirm it corresponded with the reports and recommendations, issued it.

Counsel for Left Coast then requested a hearing date for an order holding Defendants in contempt, for violation of the injunction. Then they withdrew their request, and instead filed this Motion. The next day, two attorneys filed a notice of appearance for Le and immediately objected to the motion.

Left Coast's prosecution of its claims can fairly be described as unhurried. As to the initial order granting relief, there appeared to be no particular urgency. What is more, Left Coast obtained the relief it asked for, and the Court issued the order Left Coast proposed. The problem from Left Coast's perspective appears to be that the order it asked for and got is not the order it now wants.

The Motion represents that Dearborn and Le are openly defiant towards the Court and its orders and are refusing to comply. Rather than seeking to enforce the existing injunction, however, Left Coast wants the Court to allow Left Coast to obtain control of Defendants' online accounts by authorizing or ordering third party hosts to hand them over to Left Coast. Left Coast also asks that the Court add language broadening the scope of the injunction. And Left Coast requests an award of fees and costs.

Left Coast submitted a proposed order incorporating its requests. Even assuming Left Coast is entitled to some kind of additional relief, many of the changes are either unnecessary or unacceptable. First, the language of the injunction is clear enough as it stands. Adding language that broadens it is unnecessary and is also likely to be unenforceable because it is either directed at non-parties or else is vague about who is being enjoined or what it applies to. The proposed changes make it sound much more like a contract than an order of the Court. But while ambiguous contracts may be enforced, unclear injunctions are unenforceable. *See Premier Communications Network v. Fuentes*, 880 F.2d 1096, 1100 (9th Cir. 1989) (holding that the language of injunctions must be "reasonably clear so that ordinary persons will know precisely what action is proscribed.").

By way of example, some provisions are directed not only at Dearborn and Le, but also at their "officers, directors, owners, employees, agents, and all those working in concert with" them. (*See, e.g.*, Docket no. 50-2 at 16:22–24; 17:15–17.) Many of those people are already covered by the existing order. For example, an injunction against Dearborn is also effective against its officers, directors, employees and agents acting on its behalf. *See* Fed. R. Civ. P. 65(d)(2)(B) and (C). But as to "all those working in concert"[2] with Dearborn or Le — even assuming they have notice of the order — it's unclear how

---

[2] Although Rule 65(d) provides that injunctions apply to those in "*active* concert with" enjoined parties (emphasis added), it is not enough to approximate the language of the rule. The language of injunctions must be understandable to any ordinary person to whom it is directed. *Premier Communications Network*, 880 F.2d at 1100. In this situation, it may not be clear to people Dearborn or Le do business with, such as vendors or internet hosts, whether they are covered.

4

those people are to know who they are and whether the injunction applies to them. *See* Fed. R. Civ. P. 65(d)(2) (requiring "actual notice" of an injunction "by personal service or otherwise").

The proposed order also instructs a broad range of third parties that they are "authorized *and ordered* to assist in facilitating the purpose of this order . . . ." (Docket no. 50-2 at 18:18–19:1) (emphasis added). What's meant by "assist[ing] in facilitating the purposes of this order" is not spelled out; it includes, but is not limited to transferring various kinds of tangible and intangible property and also taking "commercially reasonable measures" necessary to prevent Defendants' using that property. And in any event, the Court has no authority to order third parties to do this. *See Zepeda v. United States I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983) (holding that a court may enjoin only parties it has personal jurisdiction over, and may not enjoin parties not before it).

Furthermore, the Motion does not make clear that Dearborn and Le are now infringing on Left Coast's "Battle on the Midway" service mark. It cites social media posts and other communications suggesting bravado and a defiant or contemptuous attitude towards Left Coast and the Court. But holding the tournament under a different name and under a different location mitigates a good deal of the harm. The Motion suggests that Defendants may be engaged in confusing the public somewhat in order to steer wrestlers and their families towards Defendants' tournament. But any infringement appears to be less blatant than before. Furthermore, much of the activity the Motion documents occurred before the Court issued its injunction. The fact that Defendants were planning certain activities that the injunction now forbids does not by itself show what they will do now that the injunction has issued.

In sum, the relief Left Coast seeks does not seem to be commensurate with the threat of harm, nor was all of it contemplated earlier in this action. Those too are reasons the Motion will be denied.

/ / /

The Motion seeks to amend the award of attorney's fees and costs associated with preparing and filing the Motion. Even if the Court agrees that costs and fees should be awarded, the amount has to be documented and justified. The proposed order leaves blanks where a dollar figure should be, and the Motion has not properly documented either amount.

Nothing in the Motion shows either Defendant was served with the Court's orders (Docket nos. 46 and 48.) The Court will not sanction Defendants or hold them in contempt except on proof that they violated the Court's orders after having been served with them, or otherwise having received actual notice. *See* Fed. R. Civ. P. 65(d)(2).

Assuming *arguendo* that, as Left Coast says, Defendants are bent on disobeying the Court's injunction, enforcing the existing injunction would be far preferable to amending it in the way Left Coast proposes. The Court has the power to enforce its injunctions by imposing sanctions or holding Defendants in contempt. Nothing prevents Left Coast from seeking sanctions or contempt, if it has reason to think they are merited. If it does so, it should file proof that Defendants had actual notice of the Court's orders, by personal service or otherwise, before Defendants violated them.

Finally, Le has attempted to oppose the Motion, claiming that entry of default and default judgment were procured by fraud. Although Le's attorneys appeared rather than substituting in as ordered, and although the objection appears to be at least somewhat misguided about how default and default judgment were entered, the fact that the Motion is opposed and that Le contests the facts does make a difference.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

6

17cv466-LAB (NLS)

If the Court had been inclined to grant the Motion, it would have given Le more time to respond. But the Motion is being denied for other reasons, and Le will have a chance to respond to any motion Left Coast files later.

The Motion is **DENIED WITHOUT PREJUDICE.**

**IT IS SO ORDERED**.

Dated: July 23, 2018

Hon. Larry Alan Burns
United States District Judge