UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| LEFT COAST WRESTLING, LLC, | Case No.: 17cv466-LAB (NLS) |
|---|---|
| Plaintiff, | |
| v. | **ORDER REQUIRING FORMER COUNSEL FOR DEFENDANTS DUKE MINH LE AND DEARBORN INTERNATIONAL LLC TO FILE RESPONSE; AND** |
| DEARBORN INT'L LLC, | |
| Defendant. | **ORDER REQUIRING LE'S COUNSEL TO FILE RESPONSE REGARDING STATUS OF DEARBORN INTERNATIONAL, LLC** |

After default judgment was entered against Defendants Duke Minh Le and Dearborn International, LLC, counsel substituted in for Defendant Duke Minh Le and filed a motion to set aside the judgment. The Motion, essentially, accused Le's and Dearborn's former counsel of withdrawing without notifying them, thereby exposing them to a default judgment. It also accuses Plaintiff's counsel of knowingly failing to notify Le and Dearborn of ongoing proceedings.

///

**Procedural History**

Le and Dearborn were both served with process, and appeared in this case. Through counsel, they filed an answer to the complaint and a counterclaim. They also appeared personally at the Early Neutral Evaluation Conference on May 16, 2017. Both were aware of this case's pendency, and were actively participating in it. The Court has had personal jurisdiction over both of them throughout the pendency of this case.

On July 31, 2017, their attorney Phillip Samouris filed a motion to withdraw as counsel for both Le and Dearborn. The motion said Dearborn and Le were not communicating with him and were in breach of their retainer agreement — specifically, they weren't paying fees. The motion was supported by a declaration saying that Samouris had sent multiple emails and left a voicemail message for Le, to which Le had not responded. (Docket no. 17-2.) The only communication Samouris said he received from Le was an answer to his July 11, 2017 email, which did not discuss how Le intended to proceed with the case. (*Id.*, ¶ 7.) The declaration says that on July 31 (the day the motion was filed), Samouris also served a copy of the motion and supporting papers to Dearborn and Le both by email "and at its principal place of business." (*Id.*, ¶ 14.) The proof of service shows that this "principal place of business" for both Le and Dearborn was 7847 Dunbrook Rd., Suite D, San Diego, CA 92126.

A review of the California Secretary of State's listing for Dearborn International, LLC lists this as the address for service of process and Le as its agent. The listing says Dearborn's status is "suspended," but does not say why or on what date the suspension was effective.

After Samouris filed his motion to withdraw, the Court ordered Dearborn and Le to respond. (Docket no. 18.) The Court's order specifically cautioned them about the effect of a failure to oppose the motion, and ordered Samouris to provide a copy of the order to both Dearborn and Le. (*Id.* at 1:21–2:8.) A copy of the order was also mailed to Le and Dearborn at the addresses provided in the motion's proof of service. (*Id.* at 2:9–10.) Le and Dearborn were also warned that they should arrange to monitor the docket to keep

2

abreast of any new filings or orders. (Id. at 2:5–6.) When they failed to oppose the motion, the Court granted it, and ordered Le substituted in *pro se*. (*See* Docket no. 20.) Dearborn remained unrepresented, and was again cautioned that it could not proceed *pro se*. (*Id.* at 1:20–22.)

Upon the withdrawal of Samouris and his firm, the Dunbrook Road address was entered in the docket as the address for Le, and for Dearborn (whose agent was Le). From that date on, copies of all orders were routinely mailed to Le and Dearborn at that address.

Somewhat later, Plaintiff moved for sanctions and default judgment for Le's and Dearborn's discovery abuse. The matter was referred to Magistrate Judge Nita Stormes, who found that Le and Dearborn had failed to respond to discovery, to appear for deposition, and to comply with Court orders (including the scheduling order, issued before Samouris withdrew). Her report and recommendation recommended entry of default judgment, not as a sanction for discovery abuse under Fed. R. Civ. P. 16 and 37, but for failure to defend under Fed. R. Civ. P. 55.

**Le's Motion**

Le's Motion argues that he had no notice of his counsel's motion to withdraw, did not know about any proceedings leading up to default judgment, and only learned about the default judgment after it had been entered. He accuses his opponents of having obtained default judgment fraudulently, by serving him and Dearborn at an address they knew to be invalid, instead of serving him at his home address, where they knew he could be found. He then argues that the default judgment is unwarranted on the merits.

Although Dearborn clearly has actual notice of the default judgment, it is still unrepresented and the Motion seeks to set aside the judgment only as to Le.

**Dearborn's Status**

The Court's injunction bound both Le and Dearborn. Assuming the judgment remains intact as to Dearborn, it may be that Le's Motion is, in part, moot. For example, if Le is no longer bound by the injunction but Dearborn is still bound by it, it's unclear to what extent Le (who is Dearborn's principal) would have obtained meaningful relief.

By **August 27, 2018**, Le is **ORDERED** to file a supplemental memorandum, not longer than five pages, explaining to what extent the injunction would no longer be effective if the judgment against him were vacated but the judgment against Dearborn were not. *See* Fed. R. Civ. P. 65(d)(2)(B) and (C) (providing that an injunction against a party is also effective against its officers, agents, employees, and others in active concert or participation with it). Among other things, the memorandum should explain the extent to which Le would no longer be bound by the injunction even though he is a principal of Dearborn. The memorandum should also explain what the Secretary of State's website's "suspended" notation means, and what Dearborn's status is.

**Le's Correct Address and Adequacy of Notice**

Le's Motion points out that he and Dearborn were first served with process on March 14, 2017 at Le's home address, on Jocatal Court in San Diego. After that, he appeared through counsel, and all documents were served on his counsel. Then on July 31, his attorney filed the motion to withdraw, giving the Dunbrook Road address as the correct one. The Court accepted this, and after the motion was granted, used that as address for both Le and Dearborn. No mail sent to either of them was ever returned as undeliverable, and until Le sought relief from default judgment, the Court never had any reason to doubt that the Dunbrook Road address was current.

The fact that Le and Dearborn appeared after being served at the Jocatal Street address does not mean that was their only address, nor does it necessarily mean that was the best address to use for service. Defendants aren't required to wait until they are properly served before appearing, and often appear even if service is effected improperly, or waive service altogether. Furthermore, people and companies change their addresses. A party's attorney is in a good position to know what his correct current address is. So it was reasonable for the Court, and probably also for opposing counsel, to accept Samouris' representation.

Le's Motion now says the Dunbrook Road address wasn't really his business address, or Dearborn's. He says it is the address of a construction company's warehouse

which is "rarely occupied." (Mot. at 3:22–27.)  Le explains that he didn't want to use his home address as a business address, so he asked the warehouse owner, a friend of his, for permission to use it as Dearborn's business address. (*Id*. at 2:25–3:2, Le Decl., ¶¶ 13–15.)  It was this address he provided to the Secretary of State, and included in his email signature line. (Le Decl., ¶ 15.)  In fact, he says, he hardly ever went there; rather, he occasionally socialized with the owner, who would sometimes pass mail on to him. (*Id.*, ¶¶ 14–15).

Accepting Le's statements at face value, he appointed the warehouse owner as his agent, held the Dunbrook Road address out to the public and the government as his business address, and made no regular provision to see whether anything had been delivered. His affidavit says he last visited the warehouse several months before the lawsuit was filed. (Le Decl., ¶ 15.) He also says he never received any mail at all at the Dunbrook Road address in connection with this case, nor did anyone ever tell him that any mail was received for him there. (*Id*. ¶¶ 27, 30.)  Accepting that at face value, the most likely explanation is that his agent failed to pass them on.

Samouris mentions contacting Le by email. Le admits he often ignored or deleted emails if he did not recognize the source or subject. (Le Decl., ¶ 25.)  He says the only surviving email he now has from his former counsel was received August 2, 2017.[1] (*Id.*, ¶ 28.)

Le admits he was copied on several emails sent by opposing counsel to the Court after his counsel had withdrawn, but he claims he did not understand the legal import of them. He also says he did not receive any emails from the Court, which is not surprising. The Court is not obligated to send emails to *pro se* litigants, nor does it generally do so.

///

---

[1] The declaration actually says "August 2, 2018" but this appears to be a typographic error. The declaration says the email was received three days after July 31, 2017, and the supporting exhibit is also dated August 2, 2017.

5

Unless they are registered for electronic filing, *pro se* litigants receive notice of docket updates by postal mail, not by email.

Le's Motion in large part misconceives the adversarial process, ethical obligations of attorneys, and the obligations of parties under the Federal Rules. Attorneys are generally entitled to rely on opposing counsel's representations about their clients. They are not required to conduct due diligence to make sure opposing counsel are doing a good job. Counsel are also required to act in their own clients' interest, not in the interests of opposing parties. They are of course not permitted to use dishonest or unfair means to gain an advantage over an opponent. But they are likewise not required to save opposing counsel or parties from their own negligence or tactical errors. So long as they comply with legal and ethical requirements, they are not required to help an opposing party avoid default judgment. What this means here is that Plaintiff's attorneys were within their rights to serve Le and Dearborn at an address they reasonably believed was valid. They were not required to try to serve Le and Dearborn at every address they had, send them emails to warn them, or call them on the phone.

Le's Motion depends almost entirely on accusations against his former counsel. If his counsel's representations about his address were correct, or at least made in good faith, his claim is severely undermined. If Le had actual notice that his counsel was withdrawing and that the case was proceeding, it is weaker still. In the absence of misbehavior by his former counsel he faces an uphill battle to show why the default judgment should be set aside. And even if the Court were to entertain his Motion, it would most likely require him to post a substantial bond. *See* Fed. R. Civ. P. 60(b) (providing that, on terms that are just, a court may relieve a party from a final judgment for certain reasons).

Requiring Plaintiff to file a response would be an unfair burden unless Le's Motion is grounded in fact. Le has accused his former counsel Phillip Samouris, Samouris' co-counsel, and the firm of Higgs, Fletcher, and Mack of breaching their professional duties, and relies on this to show excusable neglect. He has also discussed the content of communications between these attorneys and himself. In doing so, the Court finds he has

waived attorney-client privilege and confidentiality rights as to the communications and other actions by his attorneys that he has put in issue here. S*ee* Cal. Evid. Code § 958; *Liberty Mut. Ins. Co. v. Calif. Auto. Assigned Risk Plan*, 2012 WL 892188, at *3 (N.D. Cal., Mar. 14, 2012) (citing cases for the principle that by putting an attorney's communications or conduct at issue, a party impliedly waives privilege as to those communications or conduct).

Within **14 calendar days of the date this order is issued**, Samouris is **ORDERED** to file a response addressing Le's accusations against Samouris, his co-counsel, and his firm. It must be supported by a declaration under penalty of perjury. Specifically, Samouris' response should address assertions made in the Motion (Docket no. 61) at 8:10–9:2 and 11:20–12:9, and the declarations or supporting documents cited therein. Among other things, the response should address the Motion's accusation that the law firm actually knew that the Dunbrook Road address was the wrong one, and decided to treat it as Le's and Dearborn's principal place of business anyway. (Mot. at 12:4–9.) The declaration should also make clear whether Le received actual notice that Samouris and his form were seeking leave to withdraw, whether Samouris provided Le with a copy of the Court's order requiring Le's and Dearborn's response to the motion to withdraw (*see* Docket no. 18 1:21–2:8), and whether Samouris informed Le that he and his firm were no longer representing him and Dearborn. Samouris may support his declaration with documents evidencing communications between him and his firm on the one hand, and Le and Dearborn on the other. If he needs more time to prepare and file his declaration, he should seek it by filing an *ex parte* application.

To be clear, the Court finds privilege and confidentiality waived only as to the matters the Motion discusses, alludes to, or otherwise relies on.

If Samouris, his firm, Le, or Dearborn object to Samouris' disclosure of these facts, they must file an objection promptly, and in no event later than Friday, August 17, 2018. If they file no objection, the Court will construe it as their concurrence that the privilege and any duty of confidentiality has been waived as to these matters.

The Clerk is directed to send a copy of this order to Samouris both by postal mail and by email at the addresses listed in the docket for him.

The hearing on the Motion will remain on calendar for Monday, October 29, 2018 at 11:15 a.m., although the Court may move the hearing or vacate it if appropriate.

**IT IS SO ORDERED**.

Dated:  August 13, 2018

_____
Hon. Larry Alan Burns
United States District Judge