UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEFT COAST WRESTLING, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DEARBORN INT'L LLC,<br><br>Defendants. | Case No.: 17cv466-LAB (NLS)<br><br>**ORDER DENYING MOTION FOR RELIEF FROM DEFAULT JUDGMENT; AND**<br><br>**ORDER OF REFERENCE** |

Plaintiff Left Coast Wrestling filed this case in March of 2017, seeking relief against defendants Dearborn International, LLC (dba Tri Titans), and Duke Minh Le. Le was Dearborn's manager and agent for service of process. The claims concerned alleged misuse of trademarks in connection with a wrestling tournament. One claim was brought under the Lanham Act, and the Court exercised supplemental jurisdiction over the remaining state-law claims.

Defendants, through their attorney Phillip Samouris, filed an answer and counterclaim (Docket no. 8) and began litigating the case. Then in July of that year, Defendants' counsel filed a motion for leave to withdraw. (Docket no. 17.) The motion cited Defendants' failure to communicate with their counsel, and a continuing breach of their agreement to pay fees. It was supported by Samouris' declaration detailing the failure to communicate. The only contact his firm had had with Dearborn was through its

1

manager, Le. Even though Samouris sent multiple emails and left multiple voicemails, Le only responded once, to an email Samouris sent on July 11, 2017, and that response did not say how Le intended to proceed with the case.

The motion was also accompanied by proof of service showing Le and Dearborn were served by mail at the same address on Dunbrook Road in San Diego. The Court then issued an order directing Dearborn and Le to respond to their attorney's motion to withdraw, and warning them about the responsibilities and consequences of proceeding *pro se*. Among other things, it warned Dearborn that as a limited liability company, it could not proceed *pro se* but would have to substitute in counsel or face dismissal of its counterclaim and a likely default. The Court ordered Defendants' counsel to provide them with a copy of the order and to assist them with filing their response. As an extra safeguard, the Court also directed the Clerk to mail copies of the order to Le and Dearborn at the addresses provided by their attorney. These letters were <u>not</u> returned to the Court as undeliverable. On August 31, 2017, the Court granted Defendants' counsel's motion to withdraw.

Left Coast moved to dismiss the counterclaims, and also sought entry of default on the complaint and sanctions for discovery abuses. (Docket no. 23.) The court issued an order construing the request for "default" as a request for entry of default, not default judgment. (Docket no. 25.) That order required Dearborn and Le to file a written opposition to the motion that addressed dismissal of the counterclaims and entry of default. It also reminded Dearborn that it was required to proceed through counsel, and could not proceed *pro se*. Left Coast filed proof of service, showing Dearborn and Le were served with the Court's order by mail at the Dunbrook Road address. (Docket no. 29.)

Under local procedures, a copy of this order, and all other orders filed after Defendants' counsel withdrew would also have been mailed to Defendants at this address, which was the address reflected in the docket. None of these letters were ever returned as undeliverable.

///

2

Dearborn and Le filed nothing, and the Court directed the Clerk to enter default against them, which was entered on January 18, 2018. Left Coast filed a renewed motion for default judgment.

The request for discovery sanctions was referred to Magistrate Judge Nita Stormes to rule on directly, and the other requests were referred to her (Docket no. 38) for a report and recommendation. See Fed. R. Civ. P. 55(b)(2). A copy of that order was served on Defendants just as for the Court's order requiring a written opposition.

Judge Stormes ordered briefing and issued a very substantial report and recommendation, recommending entry of default judgment. She issued a supplemental recommendation recommending an award of fees and costs. Defendants filed no objections to either. On June 19, the Court adopted the two unobjected-to reports and recommendations. That same day, it granted default judgment against Defendants. (Docket no. 47.)

Just over 30 days later Le, through counsel, filed an objection. (Docket no. 52.) Although styled as an objection to Left Coast's proposed injunction, the document also addressed the default judgment. This document was not filed as a motion, noticed or otherwise. Then the Court ordered Le, who was still proceeding *pro se* to substitute out and to substitute his new counsel in. (Docket no. 56.) He did this, and the Court granted the substitution. Several days later, judgment was entered. Le then filed a motion to set aside the default judgment. (Docket no. 61.)

The Court ordered a response from Samouris, finding that Le's motion accusing his former counsel of misconduct had waived privilege and confidentiality. (Docket no. 63.) Because Dearborn had never sought relief from default judgment, the same order required Le to supplement his briefing to address the effectiveness of an injunction against Dearborn only. Samouris and Le both filed their responses, Left Coast filed its opposition, and Le filed a reply brief. The motion is now fully briefed and ready for disposition.

Left Coast separately filed a motion for a finding of contempt based on Defendants' allegedly willful disobedience of the injunction. That motion has no effect on this one, but

this motion's pendency means that examination of the issue of contempt must wait until the judgment is confirmed or set aside.

**Legal Standards**

Le's motion to set aside the judgment against him is brought under Fed. R. Civ. P. 60(b). *See* Fed. R. Civ. P. 55(d). His argument, essentially, is that he had no knowledge of the proceedings against him, and that his neglect should be excused. He also charges Left Coast with fraud, although the alleged fraud consists of failing to give him notice of proceedings against him.

When deciding whether to set aside a default judgment based on excusable neglect, the Court considers three factors:[1] 1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; 2) whether that party had no meritorious defense; or 3) whether reopening the default judgment would prejudice the other party. *United States v. Aguilar*, 782 F.3d 1101, 1105 (9th Cir. 2015). The standard is disjunctive, meaning that a finding that any of them is true is a sufficient reason to refuse to set aside the default judgment. *Id*.

**Le's Culpable Conduct**

The clearest of the three factors is Le's culpable conduct. Although he describes himself as the naïve and innocent victim of Left Coast's fraud, his own inexcusable neglect was the only reason default judgment was entered against him. Assuming it is true he did not receive any of the letters or emails, and only one of the phone calls, that was the result of his own deliberate avoidance. In fact, it is apparent he received at least constructive notice of what was happening in this case, even if he chose to ignore it. Given the history of the case and his communications with his attorneys, he was also on inquiry notice. Furthermore, if any notifications were misdirected, it is only because people were following Le's own instructions about how to contact him.

---

[1] These were first articulated in *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (per curiam) and are often called the *Falk* factors.

**Le's Version of the Facts**

According to Le's opposition, which he supports with a declaration, he was served with process at his home address. (Le Decl. in Support of Opp'n (Docket no. 61-1), ¶ 16.) Le and Dearborn retained Samouris to represent them, which Samouris did. (*Id.* ¶ 17.) Le attended an early neutral evaluation conference and a scheduling conference in May and June of 2017. (*Id.*, ¶ 19.) Sometime after that, he says, he and Samouris began to have "fundamental disagreements and the attorney-client relationship broke down." (Opp'n (Docket no. 61) at 2:14–16.) Sometime in July of 2017, Le says he has a "general recollection that Mr. Samouris conveyed a desire to no longer be my attorney." (Le Decl., ¶ 21.) Le says he does not remember whether he read this in an email (which apparently he no longer has), or talking with him on the phone, or listening to a voicemail. (*Id.*; *see also* ¶ 34 (reiterating that he communicated with Samouris in July, 2017).)

He claims he was never notified of Samouris' motion to withdraw, even though the proof of service said a copy was served on Le both by email[2] and messenger service to the Dunbrook Road address. Le declares "[i]n fact I did *not* receive the Motion to Withdraw. I was traveling in Asia on July 31, 2017." (Le Decl. (Docket no. 61-1), ¶ 24.) He then undercuts this declaration by saying that he receives so many emails that he cannot read them all, and that because travel makes the problem even more acute, he typically skips or deletes many emails. (*Id.*, ¶ 25.) In other words, having just sworn that he did not receive the Motion, he admits he might have deleted it.

He also admits that in preparing to file his opposition he began looking through old emails, and found one dated July 31, 2017 from Samouris' firm, attaching a proposed order granting Samouris' motion to withdraw as counsel. (Le Decl., ¶ 26; *see also* Ex. B (copy of email).) Le also argues that service at his Dunbrook Road address was ineffective,

---

[2] The email address Le mentions is consistent throughout his declaration. He never acknowledges using any other email address to communicate with anyone involved in this case. (*See* Le Decl., ¶ 5 (declaring he has continuously used this same email address to send and receive mail for several years).)

because he was not there, and has never received anything at that address by personal delivery. (Le Decl., ¶¶ 26.) For reasons discussed below, his argument that this was not the right address to send notices to is erroneous.

Le's claim that he was traveling overseas on July 31, 2017 conflicts with the list of travel dates he included earlier in the declaration (Le Decl., 6.) According to that paragraph, which includes a comprehensive list of dates he was out of the country since the beginning of 2017, he was *not* traveling on July 31. Rather, he returned from a trip to Japan and Vietnam on July 3,[3] and took no more overseas trips until October. (*Id*.)

Le says he searched through his email account and found three emails: one dated October 19, 2017 (Ex. D), one dated December 12, 2017 (Ex. E), and one dated January 9, 2018 (Ex. F). He says he does not recall receiving any of those emails, even though they were in his inbox. Exhibit D is an email to chambers, lodging a proposed order seeking an entry of default by Left Coast. Exhibit E, another email, opens "ATTENTION: Defendants and Counterclaimants Duke Minh Le and Dearborn International, LLC" and then notifies them of the motion to dismiss the counterclaims and to enter default against them. Exhibit F is an email attaching a proposed protective order. Both Exhibit D and Exhibit E include the case name and number in the subject line, identifying the subject of the email as activity in this case. Either of these would have made clear to Le that the case he was facing default. Furthermore, the fact that neither Samouris nor anyone else at the firm had talked to Le about the case in months should have caused him to pay special attention and inquire further.

Le claims he heard nothing else about the lawsuit from the time he and Samouris communicated in July, 2017 until June 20, 2018, when a colleague forwarded him a

///

---

[3] Even if this is a typographic error and should have said July 31, he still would have been able to receive an email sent on July 31. He merely would have received it while in transit, and it would have been waiting in his inbox the next time he checked his email.

6

message about the Court's order issued the day before, entering judgment, granting a permanent injunction, and granting a monetary award. (Le Decl., 34.)

**Samouris' Response**

Samouris' response, which is supported by a declaration and exhibits, fills in many of the gaps. It shows, among other things, that Samouris took great pains to contact Le by email at both email addresses Le had provided him, left him a voicemail, and sent him letters by messenger and courier service. (Samouris Decl. (Docket no. 65), ¶¶ 5–15.) At least some of the letters were received by someone at that address, because they were signed for.[4] (*Id.*, ¶ 8.) Samouris also contacted two of Dearborn's other officers, neither of whom responded. (*Id.*, ¶¶ 8, 10, 12.)

Worst of all for Le, Samouris has attached an email conversation in which Le emailed Samouris' firm on August 17, 2017, saying he would be seeking new counsel to represent him. The firm responded by emphasizing the importance of retaining new counsel as soon as possible and mentioning that Le had been ordered to respond to the motion to withdraw. (Samouris Decl., Ex. J.) Le had no reason to think Samouris or his firm was representing Le or Dearborn any more, as he now claims.

**Le's and Dearborn's Address**

Le says that former Counterdefendant Aaron Root visited him at home at least ten times before this lawsuit was filed. (Le Decl., ¶ 8.) He also says Root and former Counterdefendant Perry Watson had his cell phone number, and had previously called and texted him. (*Id.*, ¶ 9.) And he alleges they both knew his email address. (*Id.*, ¶ 10.) His argument is that because of this, Left Coast and everyone else should have realized the correct address to serve him at was his home address, rather than the Dunbrook Road address.

/ / /

---

[4] The signature read "D. Nguyne," which is similar to the last name of one of Dearborn's officers. (Samouris Decl., ¶ 8.)

7

The Dunbrook road address, Le says, is in fact the address of a construction company, and the site is a storage warehouse for construction equipment and supplies. (Le Decl., ¶ 12.) Le knows the owner and, to avoid listing his home address as Dearborn's business address, obtained the owner's permission to use the Dunbrook Road address as Dearborn's. (*Id*., ¶ 13.) Le then listed the Dunbrook Road address as Dearborn's both in his email signature and on filings with the California Secretary of State. (*Id*., ¶ 13.) Le says he rarely received mail at that address and "hardly ever visited the location," but that when he saw the owner occasionally, the owner would "hand me a few scattered pieces of mail." (*Id*., ¶ 14.) The last time he was at the Dunbrook Road address, he says, was well before the lawsuit was filed. (*Id*., ¶ 15.)

Samouris' response shows that Le also used the Dunbrook Road address as his own business address. Samouris' declaration explains that Le gave him that address when Le retained him, and never told him it was not Le's correct address. (Samouris Decl. (Docket no. 65), ¶ 4 and Ex. A (Le's business card).) Samouris also shows that Federal Express envelopes sent to this address were received and signed for by "D. Nguyne". And Dearborn appointed Le as its agent for service of process, giving the Dunbrook Road address as Le's business address.

Le seems to suggest that Left Coast and others should have known to serve him at his home address instead of at the Dunbrook Road address. This is unwarranted and unfair. The last time Root, Watson, Left Coast, or their representatives had contact with Le at his home was when he was served with process. After that, Samouris, relying on what Le told him, gave the Dunbrook Road address as the correct address for Le and Dearborn. This address appeared in the docket, and the Court and parties relied on it. Even if Left Coast and its officers thought Le's home address was correct earlier, they were entitled to rely on what Samouris said his address now was.

Under Cal. Corp. Code § 17702.01(b)(3)–(4), when Le registered Dearborn, he was required to appoint an agent for service of process and to provide both Dearborn's and the agent's correct street address. Le appointed himself agent for service of process, but gave

8

what he now says was someone else's address where Dearborn never did business and where he almost never went.

Le's actions can be viewed in at least two different ways. He might be seen as giving a bogus address to avoid being found by process servers. This is dishonest and he cannot be heard to complain if he is hoisted by his own petard. Second, he might also be seen as having appointed the property's owner or custodian as his agent. Under this approach, Le was served whenever someone at the construction business received letters addressed to Le or Dearborn. The fact that he never bothered to check for mail, or the construction business's owner never told him about or gave him the mail does not mean he was not served. And no one other than Le is responsible for his failure to collect mail from the site.

Samouris appropriately accepted the address Le gave him, and everyone else acted appropriately by relying on what Samouris said Le's address was. The one person whose behavior was out of line was Le himself. Le blames other people for believing his deceptions, even trying to turn it around and accuse them of fraud for doing so. The Court is unmoved by his effrontery. Le has no one to blame but himself when his own lawyer believed him, or when other people relied on what he told his lawyer and the Secretary of State.

**Due Process and Alleged Fraud**

Le also argues that Left Coast's officers knew where he lived, and its law firm later sent information about the case to him at his home address. He claims that they had some obligation to serve him there. He also argues that after judgment was entered, they sent him an email taunting him. The message is merely a copy of a proposed order, however, and does not include any taunting. (Le Decl., Ex. G.) Furthermore, nobody Le blames was obligated to try to help him or to serve as his advocate, even if they could have. Even assuming Left Coast and its officers understood service of process, they were not required to give their lawyers advice about where to serve Le. And Le's suggestion that his opponent's lawyers should have tried to help him avoid default judgment is baseless. They

/ / /

9

were under no obligation to start helping Le, and abandoning their own client in this way would have been a violation of their ethical duties.

Le also says he saw some of Left Coast's officers at wrestling tournaments and practices although they did not speak. (Le Decl., ¶ 33.) He seems to be implying that they should have talked to him about the case, although there is no reason they should have. In fact, his declaration does not even make clear they saw him.

It also bears emphasis that Le was on inquiry notice, but apparently chose to ignore the obvious red flags. He knew he was a Defendant in a lawsuit. He knew had retained counsel, and he had appeared at conferences in connection with the case. He was no longer paying Samouris or his firm, and had heard nothing from them in months. He had also told Samouris' firm that he was going to retain other counsel and should have realized his attorney might understand this to mean he was being let go. All this put Le on notice that perhaps Samouris was no longer representing him in the ongoing case. This should have prompted him to search his email and voicemail, and also to check to see whether any mail had been sent to the address he gave Samouris. He could also have called or emailed Samouris or another lawyer at his firm, checked the docket, or talked to his colleagues (whom Samouris had contacted, and who could have given him information).

Le was not cheated or deprived of due process. The Court is dubious of his claims that he had no idea the case was proceeding to default judgment. But even accepting the questionable prospect that he had no actual notice, he was not entitled to be served in every possible way at every address where he might be found. Le was given notice by methods reasonably calculated under the circumstances to impart actual notice. Due process requires no more than that. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The default judgment cannot be attributed to excusable neglect or the fault or wrongdoing of anyone other than Le. Rather it flowed from Le's deliberate neglect and misrepresentations. The Court finds the default judgment is attributable to Le's own culpable conduct.

///

**Other *Falk* Factors**

Because the Court has already found one of the *Falk* factors met, it need not consider the others at length. Nevertheless, the Court finds they do not warrant setting aside the default judgment.

Le's defense is brief, and turns on credibility issues, namely whether Le was a member of Left Coast. And setting aside default judgment would be grossly unfair to Left Coast, which spent a good deal of time litigating the case in order to obtain an injunction to prevent its trademark from being misused in upcoming tournaments. There is probably no way that Left Coast's interests could be adequately protected by requiring Le to post a bond, even if he had offered to do so. And allowing Le to sit out this lengthy litigation, only to ambush Left Coast afterwards would be to sanction misbehavior, and would hand Le a powerful tool to harass his opponent, drain its resources, and delay the case's resolution.

**Conclusion and Order**

The Court is mindful of the policy of deciding cases on the merits whenever possible. *See Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). But the default judgment mechanism exists for a reason, and this case is a good example of why it exists. Having considered all the briefing and the applicable law, the Court **DENIES** Le's motion to set aside default.

With this order, Left Coast Wrestling's motion for contempt (Docket no. 68) can now be adjudicated. Because the motion depends heavily on factual findings, including some credibility determinations, the Court believes an evidentiary hearing will be needed. This motion is **REFERRED** to Magistrate Judge Nita Stormes for a report and recommendation. She may order additional briefing and hold any necessary hearings. She

/ / /

/ / /

/ / /

/ / /

should make factual findings sufficient to resolve the motion, and should recommend a disposition.

**IT IS SO ORDERED**.

Dated: March 4, 2019

_Larry A. Burns_
Honorable Larry Alan Burns
Chief United States District Judge