# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEFT COAST WRESTLING, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>DEARBORN INTERNATIONAL LLC, a California limited liability company, a/k/a and/or d/b/a TRI TITANS; DUKE MINH LE, an individual,<br><br>Defendants. | Case No.: 3:17-cv-00466-LAB-NLS<br><br>**REPORT AND RECOMMENDATION ON MOTION FOR CONTEMPT**<br><br>**[ECF Nos. 68, 87]** |

Before the Court is Plaintiff's motion for contempt. ECF No. 68. Plaintiff's motion was referred to the undersigned for Report and Recommendation. ECF No. 87. The Court held an evidentiary hearing on July 23, 2019. ECF No. 104. Plaintiff was represented by John D. Alessio and Zagros S. Bassirian. *Id.* Defendant Dearborn International, LLC (individually referred to as "Tri-Titans") has a default judgment entered against it, is not represented by counsel, and is therefore unable to appear. ECF Nos. 47, 48, 60, 87. Defendant Mr. Duke Minh Le (individually referred to as "Mr. Le") also has default judgment entered against him, and appeared representing himself. ECF Nos. 47, 48, 60, 87, 104. Tri-Titans and Mr. Le are collectively referred to as

1 | Defendants. Also present were witnesses Mr. Aaron Root, Mr. Perry Watson, and Mrs. Barbara Trieu-Le.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a dispute regarding the use of "Battle on the Midway" as a trademark and alleges claims for False Designation of Origin under the Lanham Act, with attendant state law claims including violation of the California Business & Professions Code § 17200, common law trademark infringement, conversion, breach of fiduciary duty and declaratory relief. ECF No. 1. Plaintiff alleges that "Battle on the Midway" was developed by and is a common law trademark of Plaintiff, Left Coast Wrestling, LLC ("Left Coast"), an LLC of which Defendant Mr. Duke Le was once a member. *Id.* at 4.

At the outset of this case, Defendants were represented by counsel. Shortly after the Early Neutral Evaluation conference, counsel requested and was granted permission to withdraw. ECF Nos. 17 and 18. The case proceeded, as it must, and Defendants failed to participate. Plaintiff filed a request for entry of default. ECF Nos. 21. The District Judge did not immediately grant the request for entry of default, and instead issued an order to show cause, again requiring written response from Defendants and advising of the consequences of failure to respond. ECF Nos. 22, 25. Defendants did not file a response, and default was entered. ECF Nos. 30, 31.

Following appropriate notice and motion practice, and receiving no response from Defendants, default judgment, a monetary award, and a permanent injunction were entered against Defendants. ECF Nos. 37, 38, 40, 41, 42, 43, 44, 46, 47, 48. In relevant part, the permanent injunction, which is incorporated herein by reference (ECF No. 48) and discussed in greater detail below, requires Defendants to cease use of the "Battle on the Midway" trademark, return intellectual property in the form of social media accounts and access and control of the accounts to Plaintiff, and that Defendants not host wrestling events at or near the U.S.S. Midway/Broadway Pier for a period of three years.

///

Following entry of judgment and the permanent injunction, Mr. Le retained new counsel for himself as an individual only, and moved to set aside the default and default judgment. ECF Nos. 51, 56, 58, 59, 61. Significant motion practice ensued regarding the motion to set aside (ECF Nos. 61, 62, 63, 65, 76, 78). During this time Plaintiff also filed a motion for contempt, arguing Defendants were in violation of the injunction. ECF No. 68. Mr. Le's motion to set aside the default was denied, and the motion for contempt was referred to the undersigned. ECF No. 87. Shortly thereafter, Mr. Le's counsel requested and was granted substitution of counsel. Mr. Le is now proceeding *pro se*.

## II. LEGAL STANDARDS

### a. Contempt

"Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). A district court has the inherent authority to enforce its orders through civil contempt. *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *see also Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) ("The most common utilization of [a federal court's] inherent powers is a contempt sanction levied to 'protect the due and orderly administration of justice' and 'maintain the authority and dignity of the court.'") (internal quotation omitted).

"The district court has wide latitude in determining whether there has been contemptuous defiance of its order." *Hook v. Arizona Dep't of Corr.*, 107 F.3d 1397, 1403 (9th Cir. 1997). The standard for finding a party in civil contempt is well settled:

> The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply.

*FTC v. Affordable Media LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)).

"A party's actions 'need not be willful' and there is no good faith exception to the requirement of obedience to a court order." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d at 695 (internal quotation omitted); *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985). A party may not, however, be held in civil contempt if he "has taken 'all reasonable steps' to comply with the court order." *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986); *see Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016); *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d at 695 ("a person should not be held in contempt if his action 'appears to be based on a good faith and reasonable interpretation of the [court's order].' [] 'Substantial compliance' . . . is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply.") (internal quotations omitted). Additionally, an alleged contemnor may defend against a finding of contempt by demonstrating a present inability to comply. *See United States v. Ayres*, 166 F.3d 991, 994 (9th Cir. 1999). "Ability to comply is the crucial inquiry, and a court should weigh all the evidence properly before it determines whether or not there is actually a present ability to obey." *Id.* (quoting *United States v. Drollinger*, 80 F.3d 389, 393 (9th Cir. 1996)).

### b. Evidentiary Hearing

Civil contempt sanctions "are considered to be coercive and voidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard." *Int'l Union v. Bagwell*, 512 U.S. 821, 827 (1994). "Neither a jury trial nor proof beyond a reasonable doubt is required." *Id*. Thus, the Ninth Circuit has repeatedly held "that finding a party in civil contempt without a full blown evidentiary hearing does not deny due process of law to a contemnor." *Ayres*, 166 F.3d at 995.

"At the contempt hearing, the propriety of the underlying order is not at issue; rather, the question for the Court is whether the respondent has the present ability to obey the Court's order." *United States v. Posner*, No. 16cv2387 BTM, 2017 U.S. Dist. LEXIS 138207, at *4-6 (S.D. Cal. Aug. 23, 2017); *see, e.g.*, *United States v. Rylander*, 460 U.S.

752, 756 (1983) (quoting *Maggio v. Zeitz*, 333 U.S. 56, 69 (1948)). A "contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." *Rylander*, 460 U.S. at 756-57 (quoting *Maggio*, 333 U.S. at 69).

### III. EVIDENTIARY HEARING & FINDINGS OF FACT

#### a. Notice

Federal Rule of Civil Procedure 65 establishes the "persons bound" by an injunction as follows:

> *Persons Bound.* The order binds only the following who receive actual notice of it by personal service or otherwise:
> (A) the parties;
> (B) the parties' officers, agents, servants, employees, and attorneys; and
> (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

The permanent injunction was issued on July 13, 2018. ECF No. 48. The record makes clear that actual notice of the injunction was provided to the parties, Mr. Le and Tri-Titans, as Mr. Le (who remains the agent of service for Tri-Titans) briefly employed an attorney to move to set aside the judgment and amend the injunction. ECF Nos. 51-52. The undersigned takes judicial notice of these filings, as stated on the record. ECF No. 109 at 3:5-10.

At the hearing, Mr. Le initially disputed actual notice of the injunction via receipt of the emails from Plaintiff's counsel at either the dukel@tri-titans.com[1] or dukele@dearbornint.com email addresses. ECF No. 109 at 4:14-18. In particular, Mr. Le testified that he has not used the dukele@dearbornint.com email for approximately two years. *Id.* at 5:18-25. This testimony was not credible. Mr. Le's own declaration submitted in support of his motion to set aside states explicitly that he received notice of

---

[1] This was not an accurate email as the final 'e' in Mr. Le's last name was omitted.

the injunction via email from counsel dated July 13, 2018 at the dukele@dearbornint.com address. ECF No. 61-1 at 8, ¶ 35 ("After that Order was entered, I received a letter from Plaintiff's counsel, Mr. Zagros Bassirian, on July 13, 2018, in which he informed me that a default judgment had been entered against me. I received that letter via email at dukele@dearbornint.com."). In that same declaration, he states in reference to his dukele@dearbornint.com email address that he has "continually used that email address to send and receive email" and that he receives "a high volume of emails daily, typically fifty (50)" at that address. ECF No. 61-1 at 3, 6.

In addition, throughout Mr. Le's testimony he acknowledged that he was aware of and received the judgment and injunction and took actions in response to the contents. *See, e.g., id.* at 18:8-10 ("I had planned on running the tournament for 2018 at the Broadway Pier until I got the Court order to stop running the tournament."). Several of these actions pre-dated the issuance of the final permanent injunction on July 13, 2018. For instance, Plaintiff presented evidence of Facebook posts and Mr. Le's emails, which Mr. Le authenticated. Exhs. 10, 11. Exhibit 11 is a July 10, 2018 Facebook post regarding securing a new location, which predates the official entry of the injunction.

In light of the evidence and Mr. Le's testimony, the Court finds Mr. Le had actual notice of the judgment and injunction as of the date it was entered, July 13, 2018.

### b. Evidence of Contempt

The permanent injunction entered by the District Judge is a specific and definite court order. ECF No. 53 ("the language of the injunction is clear enough as it stands"). Plaintiff's moving papers argue Defendants are in contempt of parts 1.c through 1.h of the permanent injunction. ECF No. 68-1 at 23. Accordingly, the Court will evaluate each term and determine whether Plaintiff has presented clear and convincing evidence of a violation. If so, the burden shifts to the contemnor to demonstrate why he was unable to comply. *FTC v. Affordable Media LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999).

///

///

6

3:17-cv-00466-LAB-NLS

the injunction via email from counsel dated July 13, 2018 at the dukele@dearbornint.com address. ECF No. 61-1 at 8, ¶ 35 ("After that Order was entered, I received a letter from Plaintiff's counsel, Mr. Zagros Bassirian, on July 13, 2018, in which he informed me that a default judgment had been entered against me. I received that letter via email at dukele@dearbornint.com."). In that same declaration, he states in reference to his dukele@dearbornint.com email address that he has "continually used that email address to send and receive email" and that he receives "a high volume of emails daily, typically fifty (50)" at that address. ECF No. 61-1 at 3, 6.

In addition, throughout Mr. Le's testimony he acknowledged that he was aware of and received the judgment and injunction and took actions in response to the contents. *See, e.g., id.* at 18:8-10 ("I had planned on running the tournament for 2018 at the Broadway Pier until I got the Court order to stop running the tournament."). Several of these actions pre-dated the issuance of the final permanent injunction on July 13, 2018. For instance, Plaintiff presented evidence of Facebook posts and Mr. Le's emails, which Mr. Le authenticated. Exhs. 10, 11. Exhibit 11 is a July 10, 2018 Facebook post regarding securing a new location, which predates the official entry of the injunction.

In light of the evidence and Mr. Le's testimony, the Court finds Mr. Le had actual notice of the judgment and injunction as of the date it was entered, July 13, 2018.

### b. Evidence of Contempt

The permanent injunction entered by the District Judge is a specific and definite court order. ECF No. 53 ("the language of the injunction is clear enough as it stands"). Plaintiff's moving papers argue Defendants are in contempt of parts 1.c through 1.h of the permanent injunction. ECF No. 68-1 at 23. Accordingly, the Court will evaluate each term and determine whether Plaintiff has presented clear and convincing evidence of a violation. If so, the burden shifts to the contemnor to demonstrate why he was unable to comply. *FTC v. Affordable Media LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999).

///

///

> *1.c "Defendants shall immediately return to Plaintiff by facilitating the transfer of the rights with the host company or otherwise, any and all media related intellectual property of Plaintiff…"*

This paragraph of the injunction continued to enumerate known social media accounts subject to this transfer, including the "Battle on the Midway Facebook page" (1.c.i); "Battle on the Midway Instagram account" (1.c.ii); "any and all web hosting accounts" (1.c.iii); "any and all URL hosting accounts" (1.c.iv); "any TrackWrestling databases" (1.c.v); and "any and all Battle on the Midway tournament registration databases" (1.c.vi). Defendants were ordered to "transfer the rights… together with all codes, passwords, credentials or other information necessary to fully implement and operate" the various forms of media.

On questioning, Mr. Le initially stated that in response to the injunction and with respect to transferring the rights of the media related items including the Facebook page, that "[i]mmediately, when my attorney advised me of what I needed to do in regards to a letter of the Court, I went ahead and acted on it right away. I did everything I could within my means." ECF No. 109 at 36:7-10. This testimony was not credible, and immediately belied by Mr. Le's subsequent testimony. When next asked what he did to transfer the Instagram page, he responded "I didn't know Battle on the Midway had an Instagram page." *Id.* at 36:20. When asked if he transferred www.battleonthemidway.com he first stated, "I haven't done anything. What I was instructed, that the Court ordered, I did at the time." *Id.* at 17:4-10. When asked again later if he transferred information necessary to operate the website, he responded simply, "No, I did not." *Id.* at 36:21-24. When asked if he transferred the TrackWrestling databases, he initially testified he did not remember transferring anything, and then later he confirmed he had not. *Id.* at 17:11-16; 37:4-10.

Plaintiff offered evidence that not only were transfers of social media accounts never facilitated, but some accounts have since been destroyed. Plaintiff presented Exhibit 27, a print out of what appears if one attempts to go to the

www.battleonthemidway.com web address now, which is a GoDaddy screen that asks "Is this your domain?" Exh. 27. Mr. Le confirmed that he was the original registrant of the website and the Dunbrook address[2] was used; but the registrant is currently "unlisted" and located only in California. *Compare* Exh. 8 *with* Exh. 29. Mr. Le later testified that he stopped paying for the domain hosting, and so he presumes that GoDaddy took down the site. ECF No. 109 at 37:17-18.

In all, there is clear and convincing evidence that Mr. Le did not comply with paragraph 1.c of the injunction and took no action to transfer any content. The burden therefore shifts to Mr. Le.

To the extent Mr. Le offered testimony as to why he was unable to comply with the injunction, he explained that the social media accounts and administrative rights for media related content are held by a separate corporation, Dearborn Vietnam JSC. ECF No. 109 at 8:11-9:2. Mr Le was asked directly if Dearborn Vietnam JSC was a member of Dearborn International, LLC and he responded flatly, "no." *Id.* at 9:11-15.

Mr. Le's testimony on this matter is not credible, inconsistent, and contradicts his own submissions to the Court. Mr. Le's opposition to the initial motion for contempt offered in his declaration similar testimony that a third party, "Dearborn Vietnam JSC," was employed to set up and maintain the social media accounts. However, attached to his declaration are copies of his correspondence with Dearborn Vietnam JSC. Notably the person he corresponds with has an email signature that states plainly: "Dearborn Vietnam: A member of Dearborn International LLC, USA." ECF No. 75-2 at 4.

In addition, Mr. Aaron Root testified on behalf of Plaintiff that prior to submission of the opposition, he was unaware of any involvement of Dearborn Vietnam JSC. ECF No. 109 at 41:16-18. Mr. Root testified that Mr. Eljay Pena was hired and paid

---

[2] The Dunbrook address is the address registered with the California Secretary of State for Tri-Titans, and was the subject of much dispute in Mr. Le's motion to set aside. *See* ECF Nos. 61, 62, 63, 65, 87.

approximately $4,000 to create social media accounts for Left Coast Wrestling when it was initially formed. *Id.* at 41:9-15. Mr. Root's testimony is consistent with the allegations of the complaint (ECF No. 1 at 8[3]) which Defendants have admitted by operation of default. *Parkford v. Rothluebbers*, No. 17-CV-2480 W (BLM), 2018 WL 7286507, at *4 (S.D. Cal. Apr. 17, 2018) ("Defendant's default operates as an admission of the allegations in the Complaint, save those relating to damages.").

Finally, even if Mr. Le's testimony that Dearborn Vietnam JSC had complete control of the website and social media pages was true, Mr. Le's testimony was that he has not asked to be provided with credentials for the websites:

> Q: Have you asked anyone at Dearborn Vietnam JSC to provide you with the credentials for these websites?
> A: No, I haven't had to.
> Q: Why not?
> A: There's no reason for me to ask for it.

ECF No. 109 at 12:10-16. While inability to comply with the terms of an injunction can preclude a finding of contempt, the party must first take "all reasonable steps" to comply with the order. Requesting the credentials from the party that Mr. Le purports has control would be the first reasonable step.[4] Mr. Le similarly testified he was not in possession of TrackWrestling credentials and had not contacted TrackWrestling for credentials. ECF No. 109 at 15:24-16:2.

The undersigned finds that Defendants are in contempt of the Court's order. The injunction required the transfer of social media, webpages, and databases. Deletion is not compliant, and Mr. Le fails to present any evidence of reasonable steps to accomplish

---

[3] "Plaintiff retained Eljay Pena ("Mr. Pena") as its Marketing Director, who was in charge of, without limitation, creating and maintaining Plaintiff's website, designing posters and logos for the tournament, and creating and managing Plaintiff's social media accounts, including Facebook and Instagram." ECF No. 1 at 8, ¶ 16.

[4] Mr. Le's testimony on this point remains contradicted by his own evidence. In an email dated two months after the injunction was issued, he does request Dearborn Vietnam JSC provide credentials for websites and social media. ECF No. 75-2 at 5.

transfer. Mr. Le also fails to present sufficient evidence of inability to comply to preclude a finding of contempt. Evidence demonstrates Mr. Le has, or had, custody or control over the items that were the subject of paragraph 1.c. For instance, Mr. Le was the initial registrant of the website and admits that he instructed or "hired" Dearborn Vietnam JSC or Mr. Pena to create and set up websites and social media accounts. ECF No. 109 at 9:24-10:1; 11:16-20. However, he purports to have no ability, while admitting he never inquired, to engage with either Dearborn Vietnam JSC or Mr. Pena to now accomplish transfer. *Id.* at 12:10-16.

In the end, the website was not transferred and has been deleted. The deletion occurred either at Mr. Le's direction or with his knowledge, but Mr. Le continues to hold the domain name, as the payment for the use of www.battleonthemidway.com is paid through April 1, 2021. *Compare* Exh. 8 (Registered to Duke Le, "Registrar Registration Expiration Date: 2021-04-01") *with* Exh. 29 (Registrant blank, "Registrar Registration Expiration Date: 2021-04-01"). Mr. Le's continued control of the website such that it can be deleted and the url held hostage until 2021 is evidence that he had the ability and control necessary to transfer the pages as well.

The undersigned finds there is clear and convincing evidence Mr. Le is in contempt of paragraph 1.c of the injunction, and no reasonable steps were taken to accomplish transfer of the media content.

> 1.d  "Defendants shall immediately cease, desist and disable any cross links from the Battle on the Midway website or search terms to Defendants' websites or social media portals and locations"

Plaintiff's motion for contempt states that as of the date of that filing, September 10, 2018, "[w]hen an interested person attempts to visit www.battleonthemidway.com, they are still to this day automatically redirected to www.ultimatesummerseries.com." ECF No. 68-1 at 23; Decl. Bassirian ¶ 24. Plaintiff argued that the crosslinks prevented Plaintiff from operating its own tournament under the trademark name that is the subject of this litigation.

The injunction was entered on July 13, 2018. ECF No. The motion for contempt was filed on September 10, 2018, and at that time the cross link had not been disabled. ECF No. 68. As of the date of the filing of the supplemental brief, March 18, 2019, Plaintiff represents that the crosslinks had been removed, but since that time the webpages had been completed deleted, rendering cross links irrelevant.

Mr. Le's testimony was that he did disable the cross links. Mr. Le did not address the timing of his compliance. Defendant was ordered to "immediately cease, desist and disable" the cross links. In review of the evidence previously submitted by Defendant, he again pointed to the "third party vendor," Dearborn Vietnam JSC, as the party with the ability to disable the crosslinks. Mr. Le's evidence shows that he did not take action to comply "immediately." Despite his knowledge of the order as of July 13, 2018, the email he sent to Dearborn Vietnam JSC requesting the crosslinks be disabled is dated more than two months later, September 28, 2018, and explicitly states it was sent at the "instruction of his attorneys." ECF No. 75-2 at 4 (email dated Sept. 28, 2018).

In the context of a Court Order that requires "immediate" action and provides clear direction, evidence of a two-month delay is not reasonable. Mr. Le offered no evidence of inability to comply. Even if Dearborn Vietnam JSC was the only party with the ability to disable the crosslinks, Mr. Le's own evidence shows an unreasonable two-month delay before requesting any action. There is clear and convincing evidence that Mr. Le was in contempt of paragraph 1.d of the injunction by failing to take immediate action, and waiting at least two months.

> *1.e     Defendants shall post a copy of this Order and Permanent Injunction on the Ultimate Summer Series Website (www.ultimatesummerseries.com)*

Plaintiff's motion argues that a copy of the injunction was not posted as of the date the motion was filed, September 10, 2018. ECF No. 68. In his opposition to the motion for contempt, filed on October 15, 2018, Mr. Le states that he posted a copy of the injunction to www.ultimatesummerseries.com/legal. ECF Nos. 75, 75-1 at 4. Mr. Le

does not state a date that he posted the injunction, but there is an exhibit attached to Mr. Le's declaration dated September 28, 2018 wherein he requests that someone at Dearborn Vietnam JSC post a a copy of the order. ECF No. 75-2 at 5.

Plaintiff's supplemental brief (dated March 18, 2019) acknowledges the post at that address, but argues it is not good faith compliance because the order was only assessible if the browser typed in that specific, direct web address. ECF No. 89. There was no way for a user who found themselves on the www.ultimatesummerseries.com webpage to link to or otherwise view the injunction. *Id.*

At the hearing, Mr. Le testified that he had posted a copy of the injunction and confirmed that the www.ultimatesummerseries.com website had since been taken down. When asked if the order was posted in a manner that required typing in the exact url in order to find the injunction he responded: "I am not sure. Whatever was instructed, we followed what the Court asked for, and we did it." ECF No. 109 at 16:10-11.

The language of the injunction required that the order be posted on www.ultimatesummerseries.com. For the injunction to be considered posted there, it must be on, or at a minimum, assessible from, that page. Mr. Le's attempt at technical compliance in a manner that prevented the injunction from ever being seen is not a reasonable interpretation of the Court's order. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d at 695 ("a person should not be held in contempt if his action 'appears to be based on a good faith and reasonable interpretation of the [court's order].'"). Posting the injunction in a manner that renders it completely inaccessible is neither in good faith nor a reasonable interpretation. It is an attempt at technical compliance and simultaneous evasion of any intended effect of the order. *See Inst. of Cetacean Research v. Sea Shepherd Conservation Socy.*, 774 F.3d at 954–55 (rejecting technical compliance and finding civil contempt).

As the website no longer exists, neither does the posting of the injunction. Thus, while Mr. Le may not still be in contempt of this provision, there is clear and convincing

///

evidence that Mr. Le was in contempt of paragraph 1.e of the injunction, and that his technical compliance was neither reasonable nor in good faith.

> *1.f    Defendants shall provide a copy of this Order and Permanent Injunction to all distributors, wholesalers, retailers or other agents participating in the marketing and distribution of infringing products*

To the extent evidence was presented regarding this section, Mr. Le was asked if he provided a copy of the injunction to the Port of San Diego, the Sheraton, or ABM.[5] Mr. Le testified that he did not provide a copy of the order to the Port of San Diego, but was travelling when he was informed that the event would not be permitted to proceed there. ECF No. 109 at 28:3-12. When asked if provided the order to the Sheraton or ABM he replied that he "didn't know I had to." ECF No. 109 at 28:13-15.

By the plain language of this provision, notice to the venue does not appear to be required. The venue host holds a passive role and Plaintiff presents no evidence that either the Sheraton or ABM was an active "participant" in the "marketing or distribution" of anything related to the tournament.

The Court finds there is insufficient evidence to hold Defendant in contempt of this section.

> *1.g    Defendants shall immediately return to Plaintiff via electronic format and thereafter permanently delete and cease the use of any and all databases that include contact information for attendees or spectators for the 2016 or 2017 wrestling event together with all codes, passwords, credentials or other information necessary to fully access, implement and operate the same*

Plaintiff asserts that Defendants never returned, and continued to use the attendee and spectator databases, using the 2016 information to hold both the 2017 and 2018

---

[5] ABM is the company that manages the parking lot where the 2018 tournament was ultimately held.

13

events. ECF No. 68. Plaintiff requests that considering the 2018 tournament went forward built upon the 2016 and 2017 information, the 2018 attendee and spectator data should be turned over as well. *Id.*

On questioning, Mr. Le admitted he could access the contact information for the 2016-2018 tournaments. ECF No. 109 at 38:7. However, he then testified that he "didn't know I was instructed to return anything to Left Coast in terms of tournament information that I ran." *Id.* at 38:10-12.

This testimony is not credible as the language of the injunction is plain and clear. The information related to the 2016 and 2017 tournaments was expressly required to be returned and deleted. The purported lack of knowledge also lacks credibility because Mr. Le's prior declaration indicates he was indeed aware of this requirement: "I do not have any other Battle on the Midway tournament registration databases or other databases that have contact information for attendees or spectators from the Battle on the Midway." ECF No. 75-1 at 4, ¶ 9. The declaration also contradicts Mr. Le's hearing testimony that he has access to the contact information of spectators and attendees of the 2016 and 2017 tournaments. The injunction is silent on the contact information for the 2018 tournament, and so there is no evidence of contempt related to any failure to provide that information.

In sum, Plaintiffs have not received contact information for the 2016 and 2017 tournaments as required. Mr. Le presents neither credible evidence of a reasonable attempt to comply with the order, nor any evidence of inability to comply. The undersigned finds there is clear and convincing evidence of contempt of paragraph 1.g of the injunction.

> *1.h    Defendants shall immediately return to Plaintiff any and all products belonging to Plaintiff, LEFT COAST WRESTLING, LLC, including products with the Battle on the Midway logo*

Plaintiff submits that pop-up tents, pull carts, apparel, iPads, and credit card scanners have not been returned. ECF No. 68. Mr. Le testified that he was under the impression that his prior counsel "reached out to Procopio to arrange for all that"

however, admitted that he maintains possession of those items. ECF No. 109 at 17:17-18:4. Mr. Le indicated that "supposedly there was an arrangement to deliver or pick up, whatever it may be. To this date, I don't know what happened." *Id.* at 38: 19-21.

The terms of this paragraph are clear, simple, and finite. Mr. Le was ordered to immediately return property to Plaintiff. While Mr. Le testified that his counsel "made arrangements," he then continued that the arrangements may have been to "deliver or pick up."[6] This testimony is ambiguous. If, as his testimony indicates is a possibility, Mr. Le was supposed to "deliver" the goods per the arrangement his former counsel made, that is very different than preparing the items for "pick up." ECF No. 109 38: 19-21.[7] What is clear is that nothing has happened since then to facilitate the return of these items. Regardless of the "arrangement" that may have been made, Mr. Le remained obligated to ensure his own compliance with the terms of the injunction, particularly after his counsel withdrew.

Mr. Le testified he believes he still has the items. ECF No. 109 at 17:23-18:1. Neither counsel's withdrawal nor Mr. Le's lack of understanding of any "arrangement" relieved Mr. Le of his obligation to return the goods, which he continues to retain. Mr. Le presents no evidence or testimony that he was unable to comply. The undersigned finds this is clear and convincing evidence of contempt of paragraph 1.h of the injunction.

> *1.i  Defendants shall immediately cease from coordinating, promoting, or hosting wrestling tournaments at or near the U.S.S. Midway Museum and/or the Broadway Pier and shall be enjoined from directly or indirectly performing wrestling tournaments at that finite location for a period of three (3) years*

Plaintiff argues that the location of the 2018 tournament on Harbor Island is "near"

---

[6] Counsel for Plaintiff offered that the arrangement was that the items could be dropped off at either Procopio office location. *Id.* at 43:16-23.

[7] Mr. Le's opposition states: "Mr. Le has also, through counsel, reached out to Left Coast in an effort to **deliver** some medals from the Battle on the Midway, …" ECF No. 75 at 7 (emphasis added).

the U.S.S. Midway and Broadway Pier and was in violation of the injunction. This is an argument that Plaintiff has presented previously. *See* ECF No. 50. Plaintiff previously argued that the injunction should be modified to extend a 4-mile radius "as the crow flies" from the Midway. The District Judge denied this request, noting that Left Coast got "the order it asked for" and that to the extent Defendant was to proceed with the tournament it was under a different name and at a different location. ECF No. 53 at 3, 5.

The undersigned concludes that moving the tournament to Harbor Island was reasonable. Plaintiff argues that any location along San Diego Bay qualifies as "near" the Midway and Broadway Pier. *See* ECF No. 80 at 7. This is too broad a construction. So too is a 4-mile radius "as the crow flies" from the Midway, which would not only encompass much of San Diego Bay but a good portion of Coronado.

The location where the 2018 tournament was held is approximately 3 miles from the Midway. In the context of the issuance of the injunction, and when told the event could not proceed at the Broadway Pier, Mr. Le moved the tournament to a new location. The injunction does not forbid a tournament along San Diego Bay. The new location was beyond the area that is associated with the Pier or other water features near the Midway to the north (e.g., the Maritime Museum and the Star of India) and was not in the park locations near the Midway to the south (e.g. Seaport Village and the Embarcadero). Mr. Le's choice of Harbor Island was a reasonable response to the injunction, and the Plaintiff does not present enough evidence that the Harbor Island location was "near" the Midway to support a finding of contempt.

### c. Liability of Non-Parties

In addition to Defendants, Plaintiff moves for contempt against 4 non-parties: Mrs. Barbara Trieu-Le, Mr. Eljay Pena, Mr. Steven Lawson, and O3T.

Non-parties with notice may also be held liable for aiding and abetting a party's violation of an injunction. *Inst. of Cetacean Research v. Sea Shepherd Conservation Socy.*, 774 F.3d at 949 ("It has long been settled law that a person with notice of an injunction may be held in contempt for aiding and abetting a party in violating it.") *see*

*also, Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945) ("defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding."); Wright & Miller, *Federal Practice and Procedure,* § 2956 Persons Bound by an Injunction or Restraining Order, 11A Fed. Prac. & Proc. Civ. § 2956 (3d ed.) ("The only significant exception to this rule involves nonparties who have actual notice of an injunction and are guilty of aiding or abetting or acting in concert with a named defendant or the defendant's privy in violating the injunction. They may be held in contempt.").

At the hearing, to the extent any third parties were mentioned, Mr. Le testified that his wife signed the contract on behalf of O3T with ABM to secure the 2018 event location. However, in light of the conclusion that the Harbor Island location did not violate the injunction, Mrs. Le and O3T's participation to secure the location is not evidence of contempt.

Plaintiffs did not present evidence that either Mr. Lawson or Mr. Pena acted in concert with Mr. Le to aide in violating the injunction after receiving actual notice of the injunction.

The undersigned therefore recommends the District Judge **deny** Plaintiff's motion for contempt as to Mrs. Barbara Trieu-Le, Mr. Eljay Pena, Mr. Lawson, and O3T.

## IV. RECOMMENDATION

The undersigned concludes there is clear and convincing evidence of Mr. Le's contempt of the Court's order and permanent injunction, specifically paragraphs 1.c, d, e, g, and h. In evaluating the testimony presented by Mr. Le, the undersigned finds he is not credible. In addition to the inconsistent, contradictory testimony outlined above, Mr. Le was impeached on the stand for claiming he was never a member of Left Coast Wrestling[8] when the documents and emails Mr. Le confirmed he sent clearly identified

---

[8] ECF No. at 53:12-13 ("Q: You were never a member of Left Coast Wrestling? A: Absolutely not, sir.").

17

3:17-cv-00466-LAB-NLS

his participation, he directed the incorporation of Left Coast as an LLC and asked to be named vice president. *See* Exh. 21.

It is clear that Mr. Le failed to comply with the Court's order and in particular, failed to transfer items such as the Facebook page, Instagram account, TrackWrestling databases, attendee and spectator databases, all of which have value to the promotion and continuation of a tournament for Plaintiff. However, these items require the transfer of electronic information, and no evidence was presented at the hearing on how to accomplish that type of transfer. For example, while there is evidence that what is currently the USS Ultimate Summer Series Facebook page was previously the Battle on the Midway page, no evidence was presented on how to accomplish transfer such that the compliance could be compelled.

Unfortunately, in light of Mr. Le's failure to comply with orders of the Court thus far and the apparent destruction of websites or other information, the undersigned has no confidence that further orders to compel would be effective. In their post-hearing briefing, Plaintiff presents the same concern, arguing that "due to Defendants' history of non-compliance, an order authorizing third parties to transfer Plaintiff's property directly to Plaintiff is warranted…." ECF No. 108 at 6.

Plaintiff may be correct that an order authorizing third parties to transfer the information directly is the only way for Plaintiff to obtain the information that was the subject of the injunction. But Plaintiff is in the midst of a joint venture to hold a 2019 tournament, "D-Day on the Midway." ECF No. 109 at 46:10-21. Plaintiff is clearly able to hold and promote a tournament absent the information and social media ownership that is the subject of the injunction. The Court is concerned that absent evidence supporting how transfer could be accomplished, it is not clear Plaintiff knows precisely what is necessary (*see* ECF No. 108 at n.1, correcting a Facebook url address in the post-hearing briefing). The undersigned is not inclined to recommend an order that is imprecise. Without evidence regarding what, exactly is required for third parties to accomplish data transfer, this option is not appealing.

18

3:17-cv-00466-LAB-NLS

Mr. Le is in contempt of the Court's injunction and the undersigned, like Plaintiff, has little faith in Mr. Le will abide by a Court order compelling him to do now what he was ordered to do previously. Contempt should have significant consequences. However, rather than direct action that will only invite further dispute regarding whether or not Mr. Le complied, or what scope of action is required by third parties the undersigned recommends a significant flat fee be added to the judgment. To the extent Plaintiffs lost Facebook or Instagram followers, funds could be used for marketing and advertising and a new page can be created. To the extent goods were lost, they can be replaced. Accordingly, the undersigned recommends that a flat fee of **$40,000.00** be added to the judgment. This amount is ten times the cost to Plaintiff of setting up its original social media accounts. That seems a fair assessment of the loss to Plaintiff caused by Mr. Le's failure to transfer and in some instances delete the information in violation of the Court's order.

The only item that the undersigned recommends action on is the domain name: www.battleonthemidway.com. The undersigned recommends that the District Judge's order authorize GoDaddy to transfer the registration of this domain, and instruct that GoDaddy can and should work with Plaintiff's counsel to accomplish same.

In addition to the flat fee, the undersigned recommends that Plaintiff be awarded the full costs and attorneys' fees sought in connection with bringing the motion for contempt. Pursuant to the Plaintiff's post hearing brief, this amount totals **$28,557.00**. ECF No. 108-1 at ¶¶ 4-5; Exhs. 25, 31-32.

## V. CONCLUSION

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636 and ECF No. 87.

**IT IS ORDERED** that no later than **August 15, 2019**, any party to this action may file written objections and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

19

3:17-cv-00466-LAB-NLS

**IT IS FURTHER ORDERED** that any reply to the objections must be filed and served on all parties no later than **August 23, 2018**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: August 1, 2019

*/s/ Nita L. Stormes*
Hon. Nita L. Stormes
United States Magistrate Judge